THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant, *v.* IRA DAVENPORT, Comptroller, etc., Impleaded, etc., Respondent.

The action of the State board of equalization in the discharge of the duty imposed upon it of equalizing " the State tax among the several counties of this State " (Chap. 312, Laws of 1859), is judicial in its character, and when it has acquired jurisdiction any error in its judgment or mistake in its conclusions can be asserted only in some direct proceeding for review.

The fact that said board did not have before it at its meeting a written digest of facts required by the statute (§ 7) to be prepared by the State assessors is not a jurisdictional defect, and is immaterial.

The fact that the board increased the valuation of a county without swear-

ing and examining witnesses is immaterial ; that is the duty of the State assessors, and upon the information given by them to the board, it is authorized to act.

Nor does the fact that the board after a short secret session adopted a schedule of equalization prepared by one of the assessors affect the validity of its decision.

Losses from taxes for State purposes assessed in the city of New York, but not collected, are to be borne by the city, not the State, which is entitled to the whole amount.

Under its system of taxation the State deals not with individuals, but with counties as representing divisions or areas of taxation. The share or quota of each county is charged against it, and it is for it to make up any deficiency in the collections, save that the counties outside of New York are credited for uncollected taxes on non-resident lands. (Chap. 117, Laws of 1836 ; chap. 312, Laws of 1859; 1 R. S. 419, § 5 ; chap. 427, Laws of 1855.)

As to whether an action may be maintained by the city of New York against the State comptroller to recover alleged over-payments on account of taxes for State purposes, *quære*.

(Argued May 5, 1883 ; decided June 5, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made the 2d day of February, 1883, which affirmed a judgment, entered upon an order sustaining a demurrer to plaintiff's complaint.

The averments of the complaint, so far as material, are substantially stated in the opinion.

*Francis Lynde Stetson* and *James W. M. Newlin* for appellant. The plaintiff is invested with both the power and the duty to protect its custody of all moneys in its treasury, or to be received therein, and to test the legality of all attempts to interfere therewith. (*U. S.* v. *R. R. Co.*, 17 Wall. 322–329 ; *People* v. *Ingersoll*, 58 N. Y. 34 ; *People* v. *Fields*, id. 491 ; *Webb* v. *The Mayor*, 64 How. Pr. 10 ; *People, ex rel. Root*, v. *Tappan*, 67 N. Y. 580.) The board of equalization did not act within its powers. Its power is solely that of reviewing the several county assessments for the purpose of apportioning the State tax. (*Nat. B'k of Chemung* v. *City of Elmira*, 53 N. Y. 53; *Bellinger* v. *Gray*, 51 id. 610 ; *Thompson* v. *Bur-*

*hans*, 61 id. 52; *Dorn* v. *Backer*, id. 261; *Avering* v. *Foote*, 65 id. 263; *People, ex rel. Hotchkiss*, v. *Burnham*, id. 223–226; *Phillips* v. *City of Stevens Point*, 25 Wis. 594; *Meek* v. *McClure*, 49 Cal. 624; *Wells, Fargo & Co.* v. *State Bd. of Equalization*, 56 id. 195; *Royce* v. *Jenny*, 50 Iowa, 676; *Dundy* v. *Richardson*, 8 Neb. 508; *Commrs. of Leavenworth* v. *Long*, 8 Kans. 284; *Paul* v. *P. R. R. Co.*, 4 Dill. C. C. 85; *Cummings* v. *Nat. B'k*, 11 Otto, 153.) The provisions of the statute relating to the duties of the State assessors and board of equalization are mandatory. (Laws of 1859, chap. 312, § 7; *Torry* v. *Millbury*, 21 Pick. 64–67; *Commw.* v. *Blair Co.*, 2 Pearson [Penn.], 419; *Davis* v. *Van Arsdale*, 59 Miss. 367; *Meek* v. *McClure*, 49 Cal. 624; *L. Assn. of Am.* v. *Bd. of Assessors of St. Louis County*, 49 Mo. 512; *Sharp* v. *Johnson*, 4 Hill, 92; *Young* v. *Joslin*, 26 Alb. L. J. 398; *Brevoort* v. *City of Brooklyn*, 89 N. Y. 128.) The law of 1874 (Chap. 147, § 1), requiring the plaintiff's chief financial officer, in advance of the receipt of taxes, to issue the plaintiff's bonds to the full amount of the State tax, and to pay the proceeds thereof into the State treasury, is a violation of the fundamental principles of constitutional law, and is of doubtful validity. (*People, ex rel. Auditor-Gen.*, v. *Supvrs. of Monroe Co.*, 26 Mich. 70, 76; *City of Phila.* v. *Cochran*, 4 W'kly Notes of Cases, 223; *Commw.* v. *Blair Co.*, 2 Pearson, 415.) Plaintiff is authorized to maintain an action for the redress or prevention of wrongs to its property. (*Jackson* v. *Hartwell*, 8 Johns. 425; *Todd* v. *Birdsall*, 1 Cow. 260; *Hempstead* v. *Hempstead*, Hopkins, 288; *Davidson* v. *Mayor*, 2 Robt. 256; *People* v. *Ingersoll*, 58 N. Y. 34; *Darlington* v. *Mayor*, 31 id. 164; *People* v. *Ingersoll*, 58 id. 21; *Wood* v. *Mayor*, 73 id. 556.) The action to redress or prevent the wrongs to the property of the plaintiff specified in the complaint may properly be brought against the defendants, including the comptroller of the State of New York. (*Belknap* v. *Belknap*, 2 Johns. Ch. 463; *Livingston* v. *Livingston*, 6 id. 467; *M. & H. R. R. Co.* v. *Artcher*, 6 Paige, 83; *West. R. R. Co.* v. *Nolan*, 48 N. Y. 515; High on Ex. Leg. Remedies, chap. 2; *People* v. *Owen*,

17 How. Pr. 375; *Osborn* v. *Bank of U. S.*, 9 Wheat. 738; *Davis* v. *Gray*, 16 Wall. 220; *Arlington's Cases*, 5 Morrison's Transcript, 269.) The subjects of the action are within the jurisdiction of the court. (*Chegary* v. *Jenkins*, 5 N. Y. 376; *Wilson* v. *The Mayor*, 1 Abb. 15; *Nat. B'k* v. *City of Elmira*, 53 N. Y. 49; *Matter of N. Y. Cath. Protectory*, 77 id. 342; *Union Stmbt. Co.* v. *City of Buffalo*, 82 id. 357.) Plaintiff's second cause of action is not defective because it concerns moneys already paid by officers of the plaintiff. (*B'k of Comm.* v. *The Mayor*, 43 N. Y. 188; *Dewey* v. *Supvrs.*, 2 Hun, 395; *Peyser* v. *The Mayor*, 70 N. Y. 502; *Nash* v. *The Mayor*, 9 Hun, 220; *People* v. *Fields*, 58 N. Y. 491–505; *Suprs.* v. *Ellis*, 59 id. 620–625; *McGinnis* v. *The Mayor*, 6 Daly, 416.) The remedy as to both causes of action is by injunction. (*Hartwell* v. *Armstrong*, 19 Barb. 166; *Leigh* v. *Westervelt*, 2 Duer, 618; *Phœnix* v. *Commrs.*, 1 Abb. 466; *Gillespie* v. *Broas*, 23 Barb. 370; *Mace* v. *Trustees*, 15 How. 161; *Blake* v. *B'klyn*, 26 Barb. 301; Kerr's Injunctions in Equity, 181, *x, y ;* High on Injunctions, §§ 493, 494; Bispham's Eq., § 424; *Torry* v. *Milbury*, 21 Pick. 64; *Cummings* v. *Nat. B'k*, 11 Otto, 153; *Wiley* v. *Hournoy*, 30 Ark. 609; *Chicago, etc., R. R. Co.* v. *Cole*, 75 Ill. 501; *Commrs., etc.,* v. *Long*, 8 Kans. 284; *Darling* v. *Gunn*, 50 Ill. 425; *Fratz* v. *Mueller*, 35 Ohio, 397; *Porter* v. *R. R. Co.*, 76 Ill. 564; *Paul* v. *R. R. Co.*, 4 Dill. 35; *R. R. Co.* v. *Sunnell*, 88 Ill. 535; *State R. R. Tax Cases*, 2 Otto, 575; *Kelly* v. *Pittsburgh*, 14 id. 78.)

*Leslie W. Russell*, attorney-general, for respondent. The State exercises no direct control over the local assessing or collecting officers, but intrusts the supervision of their conduct to the various counties, making the county authorities responsible for the amount of the tax to be paid by that subdivision. (Duke of York's Laws, published by authority of the secretary of Pennsylvania, in the year 1879, pp. 10, 47–49; chap. 133 of Laws of the Colony of New York by James Parker, printer, 1752; 2 R. S. [7th ed.] 1032; id. 1022, § 25; id. 996,

§ 37; Laws of 1855, chap. 427, § 8; Laws of 1862, chap. 456; Laws of 1867, chap. 670; Laws of 1870, chap. 705; Laws of 1874, chap. 462; Laws of 1879, chap. 372; Laws of 1881, chap. 453; *Union Ins. Co.* v. *Hoge,* 21 How. [U. S.] 35, 66; *State* v. *Vanderbilt,* 37 Ohio St. 641; *Easton* v. *Pickersgill,* 55 N. Y. 310; *People, ex rel.* v. *Dayton,* id. 367.) The city of New York has no interest whatever in the subject of this suit, and has no legal capacity to sue. (*City of Rochester* v. *Town of Lush,* 15 Hun, 239; *S. C.,* 80 N. Y. 302; *Sanders* v. *Vil. of Yonkers,* 63 id. 489; *Town of Guilford* v. *Cornell,* 18 Barb. 615; affirmed, 13 N. Y. 143; *Shoemaker* v. *Bd. of Commrs.,* 36 Ind. 175–183, 184.) The defendant cannot be sued for the cause of action set forth in the complaint. (*People* v. *Dennison,* 84 N. Y. 272; *Shoemaker* v. *Bd. of Commrs.,* 36 Ind. 175, 186; *State, ex rel. Drake,* v. *Doyle,* 40 Wis. 175, 176; *Carr* v. *U. S.,* 98 U. S. 433; Laws of 1859, chap. 312, § 8.) The courts in this case have no power of review of the legislative action on the subject of taxation. (Cooley on Taxation, 32; *People* v. *Mayor, etc., of B'klyn,* 4 N. Y. 419, 420; *Co. of Schuylkill* v. *Commw.,* 36 Penn. St. 524; Cooley on Taxation, 4; *Veazie B'k* v. *Fenno,* 8 Wall. 533, 548.) The courts have no power to review the action of the State board. (Laws of 1859, chap. 812, §§ 4, 7, 8; *St. Louis & V. R. R. Co.* v. *Surrell,* 88 Ill. 535; Cooley on Taxation, 291; *Porter* v. *R. R. Co.,* 76 Ill. 564; *Swift* v. *City of Poughkeepsie,* 37 N. Y. 511, 513; *Barhyte* v. *Shepherd,* 35 id. 238; *Weaver* v. *Devendorf,* 3 Denio, 117; *A. & W. S. R. R. Co.* v. *Town of Canaan,* 16 Barb. 244; *B., etc., R. R. Co.* v. *Supvrs. Erie Co.,* 48 N. Y. 93; *People* v. *Trustees of Ogdensburg,* id. 513, 518; *Bellinger* v. *Gray,* 51 id. 610, 618; *Genesee Val. N. B'k* v. *Supvrs. Liv. Co.,* 53 Barb. 223; *Western R. R. Co.* v. *Nolan,* 48 N. Y. 513, 519; *Strusburgh* v. *Mayor,* 87 id. 455; *Susquehanna B'k* v. *Supvrs. Broome Co.,* 25 id. 313.) It is of no avail to urge that the board of equalization violated its duty as to property in one section of the State, and that to do justice it should, therefore, have reduced the valuation in the city and county of New York, for New York is confessedly

not assessed enough. (*People, ex rel. Youmans,* v. *Supvrs.,* 60 N. Y. 381, 385; *Wagoner* v. *Loomis,* 37 Ohio St. 571, 580–583; *Sanders* v. *Village of Yonkers,* 63 N. Y. 489.) The plaintiff was given a full opportunity to appear and be heard. It had ample notice of the time and place of meeting, and if it desired to be heard, or to prevent any action which might be deemed hostile to itself, it should have been represented in the only place open for review of unjust assessments between the different counties of the State. (Cooley on Taxation, 266; *State R. R. Tax Cases,* 92 U. S. 609; *Porter* v. *R. R. Co.,* 76 Ill. 561, 598; *Matter of Hermance,* 71 N. Y. 481–488.) The second cause of action set forth in plaintiff's complaint is, in effect, an attempt to recover from the State a specific sum of money. No such action could be maintained against the State directly. (*People* v. *Dennison,* 84 N. Y. 273; *Shoemaker* v. *Bd. of Commrs. of Grant Co.,* 36 Ind. 175, 186; *State, ex rel. Drake,* v. *Doyle,* 40 Wis. 175, 176; 1 R. S. [7th ed.] 463, § 1, subd .9; *Com. B'k of Rochester* v. *City of Rochester,* 41 Barb. 341; affirmed, 41 N. Y. 619; *Bonnell* v. *Griswold,* 68 id. 294; *Kinnier* v. *Kinnier,* 45 id. 535; *Bailey* v. *Buell,* 50 id. 602; *Drake* v. *Shurtleff,* 24 Hun, 422; *R. R. Commrs.,* 98 U. S. 541.) If the city of New York has a claim for moneys overpaid, there is only one remedy open to her. She may have, equally with other corporations and with natural persons, the equitable right of presenting her claim against the State. (Constitution of N. Y., art. 3, § 19; chap. 211, Laws of 1881.)

FINCH, J. The causes of action pleaded were tested by a demurrer, which the courts below have sustained. The city alleged two wrongs inflicted by the State. The first was an unjust and incorrect determination of taxable values by the board of equalization, which imposed upon the city more than its due share of the aggregate State tax. The second was a compulsory payment by the city, running through a period of twenty years, of taxes which could not be collected from the

persons assessed. Such deficiencies exceeded two millions of dollars, for which the city claimed credit as against the State.

Both causes of action encounter preliminary difficulties before the merits are reached. The right of the city to sue is denied, upon the ground that, as a municipal corporation, it has no actual interest which can be affected; that it neither owns the money which may be, nor that which has been, collected from the tax payers; that its right to receive the State tax is solely for the purpose of paying it over, and it cannot turn its agency into an ownership; and that its issue of revenue bonds is authorized only for the purpose of enabling payment to be made to the State at the same time with the other counties, and in no respect confers new or different rights upon the city. It is further objected that the relief sought, though in form against the comptroller, is in fact against the State; that the latter is in reality the substantial defendant, and cannot thus be sued; and that equity will not interpose to prevent the collection of a tax, basing its refusal upon grounds of public policy and a due regard for the necessities of the State.

These questions are all interesting, and have been elaborately argued on both sides. But we deem it better to waive their consideration, since upon other grounds we have reached the conclusion that neither cause of action can be maintained.

The first is a collateral attack upon the decision of the State board of equalization, and rests wholly upon the theory that the action of that tribunal was without adequate foundation, and both unjust and erroneous. Whether in this collateral way, through a complaint against the comptroller, to which the board is not even a party, its conclusions can be reviewed, is the primary question to be determined. The process of equalization begins with the separate counties, and through the action of their boards of supervisors. The assessors of the several towns first make out their rolls and determine the valuations. In this respect they act judicially, and any erroneous decision can only be corrected by a direct review of their proceedings, whenever they have kept within their jurisdiction. If they have so acted, their conclusions cannot be assailed either by a

suit at law against them, or against those who take the further steps toward collection based upon their action. (*Barhyte* v. *Shepherd*, 35 N. Y. 238; *Swift* v. *City of Poughkeepsie*, 37 id. 511; *Buffalo & S. L. R. R. Co.* v. *Supervisors of Erie Co.*, 48 id. 93; *People* v. *Trustees of Ogdensburgh*, id. 390.) The assessors deliver their rolls to the supervisors, who are thereupon required to equalize the valuations between the several towns so that they shall bear a just relation to each other. This duty is also judicial. The precise question was determined in *Bellinger* v. *Gray* (51 N. Y. 610). And what their duty is as between the towns of their county is exactly the duty of the State board as between the several counties. That duty is, therefore, of a judicial character, and if they have acquired jurisdiction, any error in their judgment, or mistake in their conclusions can be asserted only in some direct proceeding for a review.

The State board is composed of the State assessors and the commissioners of the land office. (Laws of 1859, chap. 312.) The former are required to visit every county in the State once in two years for the purpose of ascertaining the character of the valuations, and the real value of lands assessed. They are authorized to swear and examine witnesses; all papers and records are open to their scrutiny; and local officials are required to furnish them every needed information. The knowledge thus acquired they are directed to put in the form of a written digest for the use of the board of equalization, and the latter, acting upon its own knowledge, and that thus obtained, is required, on the first Tuesday in September in each year, to meet in the city of Albany, for "the purpose of examining and revising the valuations of the real and personal estate of the several counties as returned to the office of the comptroller, and fixing the aggregate amount of assessment for each county, on which the comptroller shall compute the State tax." The board, legally constituted, met at the appointed date. The county valuations returned to the comptroller were before them, and they thus had jurisdiction to revise and examine the valuations so returned. The defects

pointed out by the complaint were in no respect jurisdictional, and the action of the board was not even shown to be irregular. It was alleged that the board " had before it no written digest of facts prepared by the State assessors." The law did not so require. It did command that the assessors should make such a digest; and the complaint does not allege that it was not made. The purpose of it is declared to be to " aid " the board " in the discharge of its duties." Clearly this could not be a condition precedent to jurisdiction, for it assumes a duty entered upon in the performance of which the written digest may assist. Nothing in the complaint forbids the presumption that the digest was in fact made; that the assessors who made it were familiar with its details; that the other members of the board had seen and studied it, and thus prepared themselves for their duties; and that it gave to each member of the board precisely the aid which the statute contemplated. Assuming these things, as we must, the absence of the written digest at the meeting of the board was not a matter of the least consequence.

It is further alleged that the board increased the valuation of the city without evidence. If this means that they did not swear and examine witnesses upon the subject, that is true but immaterial. The law did not require it, and contemplated no such means of information. The State assessors had been doing that, and exhausting in each county the knowledge thus obtainable. The board came to the performance of its duty with adequate preparation, and exactly of the character and from the sources which the statute contemplated. If the complaint means that such information was wanting, the allegation is neutralized by the distinct admission that they had " the general information possessed by members of the board in their acquaintance with the property contained in the State, and such oral general information as was conveyed to them by the State assessors, who had previously visited the various counties of the State," and by the legal presumption of the proper performance of official duty. It is thus sufficiently apparent that the board

had and acted upon the kind of evidence and information which the law contemplated.

But it is said they adopted a schedule of equalization prepared by one of the assessors, and accepted it after a ten minutes secret session. Somebody had to prepare it. Often, and in many boards, some one willing shoulder lifts more than its proportion of the common burden. When, or how this schedule was made; how much of labor and patience it represented; and how many of the other members had impressed upon it the results of their own knowledge we do not know. It is our duty to assume that it was carefully framed, and being so, we have no warrant to measure its wisdom by the brief minutes allotted to its adoption. Such a test might make havoc with the last day's work of many legislatures.

But it is finally said, and that is the only important averment, that the assessed values of the city were more than sixty per cent of the actual and market value; while those of the other counties were less than sixty per cent of such real value; and yet the board of equalization added to the injustice by increasing the city valuation. If this is true, a great wrong was done, but it cannot be redressed in this action. The accusation touches not the jurisdiction of the board but the correctness of its judgment. Town assessors may, and possibly sometimes do, make very wrong estimates of the value of specific items of property, but it would hardly do to omit all complaint on the day of hearing, and neglect a direct review, and then ask for an injunction against the collector to prevent his levy. What is said in the case at bar is a criticism upon judicial action. It is the defendant in a judgment, who has taken no appeal, seeking to enjoin the execution because the court ought to have decided differently on the facts. It seems clear to us that we cannot heed such complaint in a collateral action. When this board met the doors were open, and the city could have been heard. Other counties appeared, and made their objections; New York did not. If dissatisfied, the injured county could have sued out a *certiorari*, but no such effort was made. At all events, whatever might have been or may here-

after be a proper remedy, we cannot in this action review the judgment of the appointed tribunal having jurisdiction and acting within its authority, but must treat its decision while unreversed as conclusive.

We come now to the second cause of action pleaded. The question in the end is whether the State is to bear the loss from taxes assessed but uncollected. For twenty years the city has paid them from the proceeds of its revenue bonds issued in advance of the tax collections, and then has failed, without fault or negligence on the part of its officers, to collect the equivalent amount and reimburse its treasury. But the revenue bonds have themselves been paid by the tax payers within the area or division denominated the city. Those bonds and their ultimate payment threw what are called, and what we may call, the deficiencies upon the tax payers of the city. What has occurred, therefore, is no more than this, that such tax payers have paid in full the tax of the city as they should have done, although not at one time and through one immediate process. What are called deficiencies are not such. They grow out of the process of distribution and apportionment. They represent a fraction of the tax due to the State and paid to the State, and to every dollar of which the State is entitled, but which, from one cause and another, cannot be collected of the persons liable, and so there is required a new distribution of burden upon the remaining tax payers. The State does not deal with individuals but with counties, as representing divisions or areas of taxation. It endeavors to throw upon each its proper and just share of the public burden. It reaches this result as well as it can under a system which tries the temper of the courts and the patience of the people. The share or "quota" of each county is thus ascertained, and the amount charged against the county considered as the responsible representative of a given area of taxation. That area must pay so much money, for that is its share. If, for any reason, it does not, then it fails to pay its share, and by as much as it fails it either unjustly increases the shares of other areas, or escapes with less than its proper burden, unless it is compelled to make

up the deficiency. The State, therefore, must and does so compel. If more than two millions is to be credited to the city of New York, what will result? Two things evidently: *first,* that the city, as an area of taxation, will have borne less than its due share of the common burden by that large amount; and *second,* that the State in replacing it will be obliged to impose it as a part of a succeeding tax upon all the counties, and so shift the burden of the city to the rest of the State. If to avoid that plain injustice the legislature should reimpose it upon the city, we reach the absurdity of paying a sum one year only to reclaim it the next. These general considerations will enable us to gather the purpose and effect of the statutes relating to taxation, so far as they bear upon our inquiry.

The boards of supervisors are required to transmit to the comptroller a certificate or return of the aggregate valued amount of real and personal estate as corrected by them. (Laws 1836, chap. 117.) After these have been examined and revised by the State board of equalization, the comptroller is required to ascertain from such assessment the proportion of State tax each county shall pay, and send a statement of the amount to the county clerk and chairman and clerk of the board of supervisors of each county. (Laws 1859, chap. 312, § 8.) It is then provided that the amount of State tax which each county is to pay, as so fixed and certified by the comptroller, shall be raised and collected by the annual collection of taxes in the several counties in the manner prescribed by law. (Id., § 9.) In the general act (1 R. S. 419) the contingency of a failure to pay over taxes collected is met by a provision (§ 5) that all losses sustained by the default of any collector of a town or ward "shall be chargeable on such town or ward," and those arising from the default of a county treasurer, upon his county, and all such losses may be added to the next year's taxes. The comptroller is required to charge the treasurer or other financial officer of the county with the amount of its proportion of the State tax (Laws of 1855, chap. 427, § 8); but no credit is to be given to the county of New York, except for cash paid and fees of the disbursing officer. In the other

counties credit is given for uncollected taxes on non-resident lands; but that is done because the State takes such collections into its own hands. And even in that case where the descriptions are not sufficient the amount is charged back to the county, and if no sufficient descriptions are made, is required to be reassessed upon and paid by the tax payers of the county. (2 R. S. [7th ed.] 1032.) The tax levies specifically require the county treasurers to pay the State tax into its treasury, and the city of New York is allowed to add three per cent to its levy to meet deficiencies in the actual product of the tax imposed.

There is thus disclosed in the action of the legislature the outlines of the system of taxation intended. The State annually needs a certain amount of money to sustain its organization and execute its purposes. Since those purposes relate to the common benefit, the necessary expense should be made a common burden. Justice requires that such burden should be borne in equal and fair proportion by all the property of the State. To reach such a distribution effectively and justly, the State may and does divide its area into convenient districts of taxation. These may, or may not correspond with existing political or governmental divisions, but as such require for their own purposes the complete machinery of local taxation, the State finds it convenient to adopt the counties as districts of taxation, and to avail itself of their machinery for its own purposes. It may do this in one of two ways. It may make the county officers its officers, and so deal directly with the tax payers; or it may make the county responsible as the representative of such tax payers, arming it with all necessary powers to perform the duty imposed, and giving that duty the character of an obligation. It has chosen the latter method. It makes each county as the representative of the tax payers within its area debtor to its share of the general tax. From each it must require payment in full, and does so require it. Not to do so would throw the whole system into a jangle of discord and inequality. In any given case a failure to collect a fraction of the tax does not diminish the debt due to the

State. It affects only the distribution of the full amount among the tax payers of the district. The apportionment is first made among them on the hypothesis that all will pay. If all do not pay, and some cannot be compelled to pay, to that extent the apportionment proves inaccurate and founded on an incorrect basis, and each tax payer owes in addition his own proportionate share of the deficiency which occurs. In the city of New York this is paid by each tax payer when the debt secured by the revenue bonds is discharged; in the other counties by such reassessments as are necessary. In the present case the State has received simply its just due, and no more than that. The county has paid it, as it was bound to pay, and the burden has fallen upon the tax payers of the district, where it properly belonged.

Very much more of an interesting character might be added to this discussion, but enough has been said to indicate the principal reasons for our concurrence in the disposition which has been made of the case.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.