suggested by the defendant's counsel that it is not alleged that the act was committed within this state, or that it was perpetrated since the 1st day of September, 1895. It is true that the crime is statutory, and that there is no presumption that it exists elsewhere than in the state of New York. But the allegation is that the defamatory words were spoken at White Plains, in this state. They conveyed to the hearers the imputation of the commission of a crime by the plaintiff, which was emphasized by the statement to the effect that the act imputed to him meant in its consequences to him 16 years in state prison. It is not important for the purposes of the question that the punishment for the crime of rape in the second degree was not correctly understood or stated by the defendant. The act referred to was treated as a crime by him in the language used, and was reasonably so understood by those to whom it was addressed. It is not necessary to inquire whether or not the alleged defamatory charge may be deemed to have related to an act committed since September 1, 1895. It would have been a crime if perpetrated at any time within about nine years prior to the alleged time of speaking the words in question.

It is also urged that the plaintiff has not alleged that the defendant, by the words used, intended to charge the perpetration of a criminal act by the plaintiff. For the purposes of the pleading, it must be assumed that the defendant intended to impute to the plaintiff the crime which the language used imports, and no allegation that he did so intend, or that the defamatory words spoken by him were so understood, is necessary to the support of the averment of a cause of action. If what was said by the defendant on the occasion referred to was intended as a joke, and so understood by the hearers, that is a fact to be made to appear at the trial. No such inference arises or can arise upon the complaint for the purpose of determining its sufficiency as a pleading. There is no ambiguity in the import of the charge made against the plaintiff by the use of the alleged words. They impute to him a criminal act.

It follows that the judgment should be reversed, and a new trial granted; costs to abide the event. All concur.

---

(11 App. Div. 127.)

BROOKLYN EL. R. CO. v. CITY OF BROOKLYN et al. (three cases).

KINGS COUNTY EL. R. CO. v. SAME (three cases).

(Supreme Court, Appellate Division, Second Department. December 22, 1896.)

1. TAXATION—ASSESSMENT—REASONABLENESS.
    An assessed valuation of $2,903,665 on the property of an elevated railroad, the actual cost of which was far in excess of that, and on which $13,283,000 stock is issued and $12,968,000 bonds secured, and which has a large percentage of net income on the assessed valuation, is not excessive. 38 N. Y. Supp. 154, affirmed.

2. SAME—COLLATERAL ATTACK.
    It cannot be collaterally shown that assessors did not lay a tax in accordance with the law, as recited in their attestation thereto.

**3. SAME—IMPEACHMENT.**
    An assessment attested by the assessors, as required by law, to have been
    laid in accordance with the law in specified respects, cannot be shown by them
    to have been laid otherwise. 38 N. Y. Supp. 154, affirmed.

Appeals from special term, Kings county.

Actions by the Brooklyn Elevated Railroad Company and by the Kings County Elevated Railroad Company, respectively, against the city of Brooklyn and another. From an order in each case vacating a preliminary injunction, and denying a motion to make the injunction permanent during pendency of the action (38 N. Y. Supp. 154), plaintiff appeals. Affirmed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

William N. Cohen, Mirabeau L. Towns, and Eugene Treadwell, for appellants.

Joseph A. Burr, for respondents.

HATCH, J. In 1893 the authorities of the city of Brooklyn placed an assessed valuation upon the property of the plaintiffs, for purposes of taxation, of $2,903,665, and the tax levied thereunder for that year is the sum of $83,119.37. No application was made by the plaintiff to correct this tax, or to change or modify the assessed valuation, and no protest was made of any character to the authorities having the matter in charge. The tax was not paid, and no steps seem to have been taken to enforce collection until November 22, 1895, when the registrar of arrears of said city served upon the plaintiff a notice that he was about to sell the property of the plaintiff for the nonpayment of the tax levied in 1893, and that such sale would be had on the 11th day of December, 1895. On the day prior to that upon which the sale was to take place this action was commenced, and it seeks to have it adjudged among other things that said assessment and the taxes levied thereunder are illegal and void. Upon the complaint, certain affidavits and depositions, and other papers, an order to show cause was obtained together with a preliminary injunction which restrained the defendants from selling plaintiff's property, and it was asked in the order to show cause that said injunction be continued during the pendency of the action. On the return of this order, the court, having heard the parties and considered some additional evidence, made an order vacating the preliminary injunction, and denied the application to continue the same during the pendency of the action. An appeal from this order brings the matter before us for examination.

Laying aside for the moment all consideration of technical matters respecting the legal right of the plaintiff to maintain this action, let us consider the question as presented by this record upon the merits, in order to determine, if we may, whether the plaintiff has any real grievance, aside from the technical objections urged by it. The theory upon which taxes are levied is that there shall be a common contribution, and that all property shall bear an equal burden, usually determined by its value, upon which the

amount required to be raised is to be apportioned in some uniform ratio of equality. No claim is made in the record that the assessment is unequal in that it is assessed higher than other property in the city, or higher than property of a class similar, as telegraph and telephone structures and property, or higher than surface street-railroad property, except as the latter is exempted from taxation on real estate. It is not claimed, and no proof exists in the record to show, that there has been substantial deterioration in the structure itself since 1891 and the time when this tax was levied. While some questions were asked of the assessors if they observed any impairment of the structure, it was not shown or claimed that any serious impairment existed. That its value consists in its use in connection with the franchise is apparent, but as a structure for that purpose it is substantially as it has always been, and continues to be so maintained, and it is upon that basis that it is assessed.

The main claim consists in its reduced earning capacity, produced by the competition of street-surface roads, and this is undoubtedly substantial. There seems, however, to be an attempt to hold the city responsible, and to create an equitable claim of some sort because it has authorized the operation of surface roads. But if we assume that by the act of the defendant increased privileges have been given to the surface roads, and that these privileges have increased their earning power, it cannot operate to reduce the assessment upon plaintiff's property if the structure is still of the value at which it has been assessed, even though by such act its earning power has been curtailed. Nor does the plaintiff thereby acquire any equitable right against the city to have such result considered in reduction of its taxes beyond examination of its effect upon the value of its structure. Because competition has impaired plaintiff's earning power is no fault of the city. The latter did not agree that the plaintiff should have any exclusive right in the transportation of passengers, and no just complaint can be made if there has been diversion to others of such traffic. Nor did the city assume to be the guarantor of plaintiff's earning power. The city granted to it the franchise to erect the structure, and make profit thereby, if it could. But failure to make profit does not exempt it from taxation at a fair valuation, and because it does not make as much as it thinks it ought or thought it would, when it erected its structure, furnishes no reason for reducing its actual value for purposes of taxation. At the time when the assessed valuation of plaintiff's property was determined the board of assessors had before it a statement, made by the president of the plaintiff, in which was given the number of passengers carried by it in each of the years 1891, 1892, and up to July 25, 1893. By plaintiff's complaint in this action it is alleged that as a common carrier of passengers for hire it carries upward of 95,000 people per day, and this statement of earning power was verified by oath of plaintiff's president on the 20th day of December, 1895. It is therefore easy to see from these statements that, deducting the fixed charges from the gross earnings and operating expenses, there will be left a very large percent-

age of net income upon the assessed valuation of the property. The same measure of result is reached if the report made by the plaintiff to the board of railroad commissioners for the year 1893 be taken as the basis of earning power. Surely we ought not to disregard the plaintiff's statement of earning power, or fail in giving it just force as a measure of value of the property. Since they have placed before us this means of ascertaining the just value of this property, we are quite able to see that the assessed valuation is not excessive when measured by it. We may reach the same result by another measurement of value, in which the acts of the assessors form no part. It is not disputed but that the actual cost of the structure is far in excess of its assessed valuation per mile. Plaintiff's bonded debt upon its elevated structure, secured by four mortgages, is $12,968,000, an average per mile of about $648,400. Its stock issue upon the same property is $13,283,000. It would seem that property which can be made to secure an indebtedness of this sum is not overvalued, for purposes of taxation, at an assessed rate of valuation of only $170,000 a mile. We have read the criticism contained in the brief of counsel for the plaintiff upon the conclusions reached by the learned court below from a consideration of these figures, but we are not able to find therein any merit, and we agree with the views expressed by the learned court below upon this subject. The assessed valuation of this property for the years 1891 and 1892 was at the rate of $200,000 a mile. When the present tax was levied this valuation was reduced to $170,000 a mile. We are convinced, from a review of the evidence, and considering the matter upon the merits of the assessment, that there exists no just ground for complaint, so far as the plaintiff is concerned. It was treated with all fairness by the board of assessors. The law requires (Laws 1888, c. 583, tit. 10, § 9) that when the assessors have completed the assessment they shall evidence the same by their oaths, and this attestation must be to the effect that they have laid the assessment in accordance with law in the specific respects required therein to be stated. When the assessment roll is made up, it partakes of the character of a judgment, and the acts of the assessors in making it up are judicial in their character. Where the assessors have jurisdiction to act, their action becomes final, and may not be attacked collaterally in any proceeding. Buffalo & S. L. R. Co. v. Board of Sup'rs of Erie Co., 48 N. Y. 93; Mayor, etc., v. Davenport, 92 N. Y. 610, 611.

In the present case it appears—indeed, it is not disputed—that the assessment roll as made up contained the attestation clause attached thereto in the form prescribed by law. It is not contended but that the assessors had jurisdiction to levy the assessment. Having jurisdiction to act, and having certified that they have acted as the law requires, there remains nothing which can be attacked by this action. It has been sought to be shown that in fact the assessors did not lay the tax in accordance with law. But there exists no right to do this in this action, within the doctrine of the foregoing cases. And it matters not how this is attempted to be

shown. If, by the assessor himself, the law replies that, having certified that he performed his duty, he will not now be heard to impeach his act. This principle rests upon the solid ground of public policy which restrains public officials—certainly those acting in a judicial capacity—from impeachment of official acts which the law requires, and which they have solemnly declared that they have performed, if by other proof the barrier is firmly set against collateral attack. The practice which obtained in this case cannot be supported. No right exists, under the cover of securing depositions, to enter upon an examination which seeks to show that assessors, in the performance of official duty which they have certified they performed, in fact violated the law. Evidence secured in this manner is without the sanction of law, and may not be considered.

We have examined the points which have been raised by the plaintiff upon this appeal, and find them without merit. The case of the Kings County Elevated Railroad Company involves the same questions, and must meet with a like result. The appeal from the order denying the motion for a resettlement by striking from the order vacating the injunction the report of the plaintiff to the board of railroad commissioners, and which has been argued herewith, we think must be affirmed. It is the statement of the learned court below that plaintiff's counsel was informed that the reports of the railroad commissioners had been submitted, and the learned judge suggested that, if it was desired to submit anything against it, he would consider it. So far as appears, no objection was made, and there has never been any request to submit anything in opposition, or to be heard thereon. And it is not now claimed that the reports are in any respect incorrect. The claim simply is that they do not extend beyond June 30, 1893. We are unable to see that plaintiff has been in any respect prejudiced by the consideration of these reports. In view of the expressed statement of the complaint as to the extent of the business of the plaintiff, the report may not be considered misleading in the respects claimed, for the inference which may be drawn from the allegation of the complaint is quite as strong as the one to be inferred from the report.

It follows that the orders appealed from should be affirmed, with $10 costs in each case, and disbursements. All concur.