(40 Misc. Rep. 595.)

### CITY OF NEW YORK v. WATTS.

. (Supreme Court, Trial Term, New York County.   May, 1903.)

1. TAXATION—DUTIES OF DEPUTY TAX COMMISSIONER.
 Under the charter of the city of New York of 1897, § 889 (Laws 1897, p. 317, c. 378), requiring the deputy tax commissioners to assess all the taxable property that may be assigned them by the board of taxes and assessment, it was not necessary that a deputy tax commissioner should furnish the board with a detailed statement of the personal property of the person assessed.

2. SAME—ACTION FOR TAXES.
 In an action by the city of New York, under Greater New York Charter, § 1526, to recover taxes, it is sufficient proof that the taxbooks were kept open for examination and correction as required by such section by proving the notice that they were open, and publication thereof in the required newspapers.

3. SAME—ASSESSMENT ROLLS—DELIVERY.
 The fact of delay of 18 days in delivery of assessment rolls to receiver of taxes, instead of an "immediate delivery," as required by the charter of New York, § 911, does not invalidate the tax.

4. SAME—DEMAND BEFORE ACTION.
 Where a city seeks to recover taxes of an individual, it is unnecessary to prove a demand before action brought.

Action by city of New York against Archibald Watts to collect taxes.   Judgment for plaintiff.

George L. Rives, Corp. Counsel (Martin Saxe and Henry M. Powell, of counsel), for plaintiff.

John C. Shaw and Henry De Forest Baldwin, for defendant.

GIEGERICH, J.   The action is brought to collect personal taxes amounting to $1,123.38 on an assessment of $50,000 in arrears from the year 1900.   The defendant put in no evidence, but relies solely upon alleged failures on plaintiff's part to prove certain things that it is claimed should have been proved, or upon facts brought out on cross-examination, which, it is claimed, affirmatively show that the tax was not duly imposed.   It is admitted that no proceedings by certiorari to review the assessment were ever taken, and the plaintiff insists that the assessment has consequently become conclusive upon the defendant, and unassailable by a collateral attack.   This proposition seems to have been well established by the decisions.   In United States Trust Co. v. Mayor, 144 N. Y. 488, 492, 39 N. E. 383, which was an action brought to recover back taxes, paid during a series of years, on the ground that the assessments were void, the court said:

"Had the plaintiff instituted a proceeding to review the action of the commissioners by suing out a writ of certiorari, it would have been in a position to cancel the assessments by reason of the error in their making.   This was the remedy which the statute prescribed for the review of assessments, illegal, erroneous, or unequal, and through which a reversal might be had, and it is the appropriate proceeding at law to correct the errors of the taxing officers.   They were acting judicially in assessing the plaintiff, and their action had all the force and effect of a judgment, which, while open to review by some direct proceeding prescribed by the law, is secure against collateral attack."   And also: "It is necessary for the protection of the taxpaying officers that an attack upon their action should be limited to that which

is direct, and in the nature of an appeal from it, where that action has been with jurisdiction; and the irresistible inference seems to be that when the Legislature has created a system of procedure for the review and correction of assessments, as it has by the act of 1880 (Laws 1880, p. 402, c. 269), it was intended to be an exclusive one."

See, also, Mayor v. Davenport, 92 N. Y. 604, 611; People ex rel. Mutual Union Telegraph Co. v. Commissioners, 99 N. Y. 254, 1 N. E. 773; Brooklyn E. R. Co. v. City of Brooklyn, 11 App. Div. 127, 132, 42 N. Y. Supp. 683.

On behalf of the defendant, it is rejoined that this is not a collateral attack, but an action to collect the tax, and that the burden has been shifted to the plaintiff to prove every step necessary to the imposition of the tax. This argument, assuming that the burden has been so shifted, would deprive the rule above referred to of much of its efficacy, and on very unsubstantial grounds of distinction. The important point is not where the burden of proof may happen to be in the particular proceeding or action, but whether the issues can be raised at all after failure to raise them in the manner provided by the statute, where, as here, the board of taxes and assessments, and its subordinates, had jurisdiction to act. But assuming that questions as to the regularity of the assessment can be raised by the defendant, I do not find any fatal defects in the proceedings.

The first objection advanced is that the deputy tax commissioner who made the assessment did not furnish to the board of taxes and assessments a detailed statement of the personal property either of the defendant or any one else. It is claimed that this was required to be done under the statute then in effect, viz., section 889 of the charter of 1897 (Laws 1897, p. 317, c. 378), which is as follows:

"Sec. 889. It shall be the duty of the deputy tax commissioners, under the direction of the board of taxes and assessments, to assess all the taxable property in the several districts that may be assigned to them for that purpose by said board, and they shall furnish to the said board, under oath, a detailed statement of all such property, showing that said deputies have personally examined each and every house, building, lot, pier or other assessable property, giving the street, lot, ward, town and map number of such real estate embraced within said districts, together with the name of the owner or occupant, if known; (also, in their judgment, the sum for which said property under ordinary circumstances would sell), with such other information in detail relative to personal property or otherwise, as the said board may from time to time require. Such deputies shall commence to assess real and personal estate on the first Tuesday of September in each and every year."

I do not think, however, that all these requirements apply to personal property. Most of them obviously do not and cannot apply to anything but real estate. All that is required with respect to personal property is covered by the words "with such other information in detail relative to personal property or otherwise as the said board may from time to time require." The point is also made by the defendant that there was an entire absence of evidence that the taxbooks were kept open for examination and correction. All that was offered on this point was the notice that the books were so open, and proof of the publication of that notice in the prescribed papers. For the defendant, it is insisted that this was not proof that the books were open,

but only that the notices so stated.   Section 1526 of the Greater New York charter provides, however, in its last sentence, as follows:

"Sec. 1526.   *   *   *   The comptroller shall cause a continuous series of the City Record to be bound, as completed quarterly, and to be deposited with his certificate thereon, in the office of the register of deeds of the county of New York, in the county clerk's office of said county and in the office of the city clerk, and copies of the contents of any part of the same, certified by such register, county clerk or city clerk, shall be received in judicial proceedings as prima facie evidence of the truth of the contents thereof."

Further, it is claimed that the assessment rolls are required to be delivered (section 911) to the receiver of taxes on or before the 1st day of September, whereas such delivery was in fact made in the year in question on the 19th day of that month.   It has been established by frequent decisions that such a provision is directory, merely, and not mandatory.   In People ex rel. Rome, Watertown & Ogdensburg R. Co. v. Haupt, 104 N. Y. 377, 10 N. E. 871, it was said (at page 380, 104 N. Y., and page 872, 10 N. E.):

"The delivery of the completed and verified roll is required by section 9 of the act of 1880 (Laws 1880, p. 403, c. 269) to be made to the town clerk, or other proper officer, 'on or before the first day of September.'   The return shows a delivery twenty days later.   Such delay did not vitiate the assessment.   The provision is directory, and since the relator had his fifteen days, after the delivery to the town clerk, within which to sue out his writ, and did actually do so, we cannot see how it has suffered any prejudice from the delay.   *   *   *   We should sacrifice substance to form if we held that such a mistake vitiated the whole assessment."

And in People v. Allen, 6 Wend. 487, it was said that:

"A statute, specifying a time within which a public officer is to perform an official act regarding the rights and duties of others, is directory merely, unless the nature of the act to be performed, or the language used by the Legislature, show that the designation of the time was intended as a limitation of the power of the officer."

See, also, Bradley v. Ward, 58 N. Y. 408, and Oswego County v. Betts (Sup.) 6 N. Y. Supp. 934.

It is also insisted that a demand was necessary before this action could be maintained.   The statute in force at the time the default occurred (Charter of 1897, § 930) provided for proceedings to enforce the payment of taxes "in case of the refusal or neglect of any person to pay any tax imposed on him for personal property," etc.   Section 848 of the consolidation act (Laws 1882, p. 232, c. 410) required a demand to be made by the receiver of taxes upon the president or other proper officer of "incorporated companies" for the payment of all taxes assessed upon such companies, but I am aware of no requirement for such a demand in the case of individuals.   Indeed, I do not understand that the defendant's attorney claims that there is any such statutory requirement, but relies upon Thompson v. Gardner, 10 Johns. 404, to show that a demand is necessary at common law, irrespective of statutes.   In that case it was said, "It would be an alarming doctrine to say that a collector of taxes might sue immediately every person on his assessment roll, without first demanding payment of the taxes."   It does not appear what, if any, provisions existed in that case for publishing notices of the time taxes were due, and the demand therefor,

such as did exist when this default occurred. See Charter of 1897, § 919. The difference in the apparent functions of the tax officer in that case and in this is indicated by the title given him; being in the one case "collector," and in the other "receiver." Besides, the statute has distinctly provided for a demand in the case of corporations, and has just as distinctly implied by the language above quoted, viz., "refusal or neglect," that no demand is necessary in the case of individuals. My conclusion is that no previous demand was necessary.

It is also insisted that there was a failure to comply with the requirements of the charter in regard to the method of advertising the following notices: (1) That the books were open for examination and correction (section 892); (2) that the assessment rolls had been delivered to the receiver, and that all taxes were due and payable, etc. (section 914); (3) that any taxes remaining unpaid on November 1st must be paid before December 1st, or proceedings to collect would be taken (section 918); and (4) the notice required to be published immediately after the 1st day of December to all delinquents to pay their taxes to the receiver or to his several deputies in the several boroughs (section 919). Provision is made for such publication by the various sections in the following language:

"In the City Record, and the corporation newspapers, and in such other newspaper or newspapers published in the several boroughs created by this act as may be authorized by the board of city record" (section 892); "in the City Record and the corporation newspapers and in such newspaper or newspapers published in the several boroughs as may be designated by the board of city record, or in default of any newspaper being published in any borough, in such newspaper or newspapers having a general circulation in such borough as the board of city record shall direct" (section 914); and, "in the City Record, and the corporation newspapers, and in such daily papers having a general circulation in any boroughs as the board of city record shall (or may) designate" (sections 918, 919).

The irregularity alleged is that the board of city record, as constituted at the time some of such additional designations were made, or assumed to be made, included the mayor, the deputy comptroller, and the acting corporation counsel, and that there was no proof of the authority (as required by sections 150 and 256) of the latter two officers to act in place of their respective chiefs. But even if such be the fact, and the action of the board might be invalid and ineffective for some purposes because of such want of authority on the part of two of its acting members, still the defendant is not in a position to raise the question, since it has not been shown that he has been prejudiced. The notices were in fact published, and the method by which they came to be published, so far as this defendant is concerned, is immaterial. This want of injury shown is a sufficient reply, also, to the further objection made by the defendant, that the notice prescribed by section 914 was not published "immediately," as required by the statute, but on October 1st; the assessment rolls having been received on September 19th preceding. The doctrine of the strict construction of statutory requirements, and of minute scrutiny of proceedings leading to the imposition of taxes, is invoked by the defendant's counsel; but, in my opinion, it does not apply under these circumstances. This is not the case of a citizen deprived of his property and seeking to

regain it (as in an action to redeem after a tax sale), but of a citizen seeking to evade his share of necessary burdens which his fellow citizens have borne without protest or resistance. Nevertheless, if the defendant had shown that he was injured by any of the irregularities alleged, an offset should doubtless be allowed to the extent of such damage. But he did not show such injury, and it is difficult to conceive how any could have resulted to him from any of the circumstances complained of, unless it be from those relating to the assessment; but, as above pointed out, any questions as to those should have been raised earlier and in a different manner, viz., by certiorari within the time limited by the statute.

My conclusion is that none of the objections raised are sufficient to defeat the plaintiff's right to recover, and that judgment should be granted for the amount demanded in the complaint, with costs.

Judgment for plaintiff, with costs.