construction or implication, and the courts should not impose the penalty except in cases where the plain language of the statute requires it. The learned counsel for the plaintiff contends that the privilege granted to the Caledonia Gas Light & Heating Company imposes an obligation upon it to supply the plaintiff and the public with gas at 25 cents per 1,000 feet, and in refusing to supply the plaintiff with gas it violated its contract with the municipality. It is true that the company, in order to obtain the consent of the village authorities to carry on its business in the village and to lay its conductors in the streets for the purpose of delivering gas to the consumers, agreed to supply gas for public and private use at a price not to exceed 25 cents per 1,000 feet. The village authorities of Caledonia were vested with legislative power to grant or refuse the application. It was necessary, therefore, for the gas company to obtain the consent of the municipal authorities before it could legally lay its pipes and carry on its business. As a general rule, a corporation that seeks to obtain privileges from a municipal corporation may deal with the municipal authorities and make contracts the same as an individual. Where a corporation which is organized for public purposes obtains its franchise from the municipal authorities upon certain conditions, it is bound by its contract, and cannot repudiate it without permission from the municipal authorities. Judge O'Brien in People v. Deehan, 153 N. Y. 533, 47 N. E. 787, says: "A franchise for supplying gas not only confers a privilege, but imposes an obligation, upon the corporation to serve the public in a reasonable way." Whether the Caledonia Gas Light & Heating Company may be compelled to live up to its contract in supplying gas to the consumers is a question not necessary for me to discuss or pass upon in this action. The question here is, can the plaintiff recover the statutory penalties on the ground that the defendant has refused to supply him with natural gas for 25 cents per 1,000 feet? After a careful examination and consideration of the statutes referred to by counsel, I have reached the conclusion that the penalty imposed by section 65 of the transportation corporations law does not apply to corporations organized for supplying natural gas to consumers. The complaint, therefore, must be dismissed, with costs.

---

## WALLACE v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENTS—VACATION OF ASSESSMENT—RECOVERY OF ASSESSMENT PAID.

Under Consolidation Act, § 898, empowering the court, in case it shall appear that alleged fraud or substantial error has been committed in assessing taxes for local improvements, to vacate or modify the assessment and the lien created thereby: and section 901, giving any person applying for such relief the right to embrace in one proceeding all assessments in which he is interested; and Laws 1896, c. 910, providing that, whenever an assessment for a local improvement has been annulled by a judgment of any court, the amount paid on such assessment may be recovered,—where an assessment for a sewer had been paid by plaintiff's testator the fact that an owner of other lots, assessed for the same improvement, had brought an action to vacate the liens created thereby,

and that an order was entered vacating such assessments and liens.
did not entitle plaintiff to recover back the money paid on the assessment
by his testator, since the power of the court to vacate the assessment was
confined to the property of the person who made the application .

Action by George W. Wallace, as executor, against the mayor,
aldermen, and commonalty of the city of New York. After the direc-
tion of a verdict for defendant, plaintiff's motion for a new trial was
ordered to be heard in the first instance in the appellate division.
Motion denied.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
O'BRIEN, and INGRAHAM, JJ.

Augustus Van Wyck, for the motion.
George L. Sterling, opposed.

INGRAHAM, J. The court upon the trial directed a verdict for
the defendant, to which the plaintiff excepted, and that exception pre-
sents the sole question before us.

It appears that on the 24th of May, 1881, an assessment for a sewer
was confirmed by the board of revision and correction of assessments
of the city of New York, whereby an assessment was imposed on cer-
tain lots described in the complaint, of which James Wallace was the
owner, and that on the 30th of November, 1894, the plaintiff, as exec-
utor of the said James Wallace, who had in the meantime died, paid
the said assessment. This assessment was imposed under the pro-
visions of chapter 556 of the Laws of 1880, subsequently re-enacted
as section 868 of the consolidation act. It is there provided that:

"The head of the department charged with the execution of the work in
question shall certify to the said board of assessors the total amount of all
the expenses which shall have been actually incurred by the mayor, aldermen
and commonalty on account thereof. The comptroller shall certify to the said
board of assessors the amount of the interest, at the legal rate, upon the
several installments advanced or payments made on account of such work,
from the time of such payment or advance by the city to a day sixty days
after the date of such certificate. Thereafter the said board of assessors shall
assess upon the property benefited, in the manner authorized by law, the
aggregate amount of such certificates, or such proportion thereof as is author-
ized by law."

By chapter 308 of the Laws of 1861, re-enacted as section 867 of
the consolidation act, the board of revision and correction of assess-
ments was constituted, and power was conferred upon the said board
to consider on the merits all objections made to any assessments;
and it is provided that, unless the assessment lists are referred back
to the board of assessors for revisal and correction, they shall be con-
firmed at the expiration of 30 days from the time they shall be re-
spectively presented for confirmation.

The acts of the board of assessors and the board of revision and cor-
rection of assessments, under the act before referred to, were in their
nature judicial. The question being submitted to the discretion of
the board, an error of judgment, if such existed, could not be reviewed
by the court in proceedings to set aside the assessment. In re Cruger,
84 N. Y. 619. The assessment thus being imposed upon the property
of the plaintiff's testator by the duly-constituted authorities, in whom

was vested a discretion as to the amount to be imposed as the benefit accruing to the property by the improvements, the plaintiff paid that assessment. Subsequently chapter 910, Laws 1896, was passed, and plaintiff brought this action to recover back what he had paid. The plaintiff proved on the trial that one Charles F. Alvord, who was the owner of certain other property, upon which the assessors had imposed an assessment for the same improvement, commenced a proceeding in the supreme court to vacate the assessment. The petition in that proceeding alleged that on the 24th of May, 1881, the assessment was confirmed by the board of revision and correction of assessments, "and an assessment was hereby imposed upon lots" described, which were lots other than those owned by the plaintiff's testator, and further alleged that the said assessment was irregular and void, six specific objections thereto being specified; and the petition prayed that said assessment "may be vacated, and the lien or liens created thereby, or by any subsequent proceeding, be canceled and discharged, so far as the same affect said lots." On the 31st of May, 1883, an order was entered in such proceeding by which it was ordered "that the assessment for boulevard sewers between 106th and 153rd streets, confirmed on the 24th day of May, 1881, be, and the same hereby is, vacated, and the lien or liens created thereby, or by any subsequent proceedings, cease and be canceled and discharged, so far as they affect lots known and distinguished by the ward numbers, 65 to 60, in block 1182." That proceeding was brought under chapter 338 of the Laws of 1858, and section 12 of chapter 550 of the Laws of 1880, re-enacted in the consolidation act as sections 898 to 903, inclusive. By section 898 the power that is given to the court is that:

"If, upon such hearing, it shall appear that the alleged fraud or substantial error, other than such errors as are specified in the next section, has been committed as provided in this title, the said assessment shall be vacated or modified, and the lien created thereby, or by any subsequent proceedings, shall cease."

And section 901 provides:

"Any person applying for relief, under the provisions of this title, may embrace in one proceeding any or all assessments for local improvements in which he is interested."

I think it clear that the intent was to provide a remedy for the owners of property upon whose property an assessment had been imposed, which should be set aside or reduced by reason of fraud or irregularity, but the power of the court in such a proceeding was confined to granting relief to the property of the person making the application. The statute does not contemplate a proceeding by which the action of the board of assessors or the board for the revision of assessments can be reviewed, so that the entire assessment imposed for a local improvement can be vacated or annulled. It is for the relief of a property owner who alleges that an assessment upon his specific property should be vacated or modified that the statute was passed; and it has been held that an order in such a proceeding, instituted by the owner of specific property upon which an assessment has been imposed, vacating or modifying such an assessment, will not inure to the benefit of the owner of another piece of property, upon which a

like assessment has been imposed for the same improvement. Wilkes v. Mayor, etc., 79 N. Y. 621; Purssell v. Mayor, etc., 85 N. Y. 330; Trimmer v. City of Rochester, 130 N. Y. 401, 29 N. E. 746; In re Delancey, 52 N. Y. 80. In the Delancey Case, Chief Judge Church says:

"The order in the Whitney Case does not purport to vacate the assessment upon any other lands. The 'party aggrieved' can only apply to vacate, and the order cannot affect any other party, or the lands of any other. There may have been irregularities as to one owner, and not others, and some of the owners might be willing to waive irregularities applying to all, in which case such owners are not in any legal sense aggrieved parties. The proper construction of the act is to regard the proceedings instituted under it applicable only to the lands described in the proceedings."

We have, therefore, an order vacating an assessment imposed upon specific property, which order does not affect any other party, or the lands of any other party. The statute under which the assessment was imposed clearly recognizes that the assessment upon each particular piece of land therein described is a separate assessment imposed upon that particular piece of land as the benefit which it receives from the improvement, and that each application to vacate or reduce such a specific assessment upon each separate parcel of land must be instituted by a separate proceeding, except so far as, under section 901 of the consolidation act, a person applying for relief may embrace in one proceeding any and all assessments for local improvements in which he is interested. In the year 1896, when the act hereinafter mentioned was passed, an assessment for local improvement had been imposed upon the land of the plaintiff's testator, which had not been vacated or annulled, but which had been paid by plaintiff; but other assessments for the same local improvement upon other property had been vacated as to such other property. An act was then passed (chapter 910 of the Laws of 1896), entitled "An act to authorize the recovery of an assessment paid for local improvements, which assessment has been annulled," which provided that:

"Whenever an assessment for a local improvement has been annulled by a judgment or order of any court, any sum of money which has been heretofore, or shall be hereafter, paid thereon, may be refunded with interest from the time of such payment."

Under this act the plaintiff seeks to recover the amount that he paid for an assessment which has never been annulled, because an assessment upon another piece of land for the same local improvement has been vacated. The plaintiff insists that, if this statute did not apply to this case, it would not apply to any, as, in all other cases under the law as it before existed, a person paying an illegal assessment could, by proving the irregularity, recover back the money paid. It is not necessary for us to determine in this case to just what conditions it was intended that this act should apply. There are, however, many cases in which a person has been precluded from recovering back an assessment paid by him because the payment was voluntary, or for some other reason the person paying the money was estopped from recovering it back. Upon a fair construction of the language used in the statute, it cannot be held to apply to a case like that now

presented. The title of the act indicates the object that the legislature sought to attain. It is to recover an assessment paid for local improvements, which assessment has been annulled. Here it is not claimed that this assessment, which has been paid and which is sought to be recovered back, has been annulled, but that another assessment upon other property has been vacated, and the lien thereof discharged. To "annul" is "to render void or declare invalid; nullify, abolish." Stand. Dict. The statute enacts that, whenever an assessment for a local improvement has been annulled by the judgment or order of any court, any sum of money which has been paid thereon may be refunded, with interest. I think that under the provisions of the consolidation act, both in regard to imposing the assessment and providing for its vacation, the amount imposed upon each particular piece of property is regarded as a separate assessment, the amount of which depends upon the benefit which the property receives from the improvement, and a remedy is given to the owner of any property upon which such an assessment has been imposed for relief from any fraud or illegality. If that be the correct construction, then it is clear that this particular assessment upon the property of the plaintiff's testator has never been annulled. Assuming, however, that this construction of the act authorizing the imposition of the assessment is wrong, and that the assessment for the specific improvement, taken as a whole, is one assessment, then that assessment has not been annulled. The lien of the assessment, so far as it affects specific pieces of property, has been canceled and discharged, but the assessment as a whole has not been annulled. It appears from the proof that a large proportion of it has been recognized and paid. Whichever way, therefore, we may look at the assessment,—either as a single assessment for the whole local improvement, or as a separate assessment upon each specific piece of property,—the assessment has not been annulled, and it does not, therefore, come within this provision of the statute.

We are referred to an opinion of Mr. Justice Spring in the special term of the supreme court, but, as the facts in that case appear to be quite different from those in the case at bar, it is not necessary that we should approve or disapprove of the views that he expressed. We are clearly of the opinion that the act cannot be held to apply to the case now before us.

It follows that the exceptions must be overruled, and the motion for a new trial denied, with costs. All concur, except O'BRIEN, J., not voting.