Henry J. Latham, J.
This is an omnibus motion by the respondent, Tax Commission of the City of Few York to dismiss before answer the petition herein on the grounds (1) that it does not state facts sufficient to warrant relief under the provisions of article 13 of the Tax Law, (2) that it appears on the face thereof that the court does not have jurisdiction of the subject matter of the proceeding and that (3) the petitioners have no common or general interest entitling them to maintain this proceeding in a representative capacity. The movant prays “ for a further order, if required, pursuant to Rule 102 of the Rules of Civil Practice requiring the petitioner Max M. Lome to serve a separate amended petition from which all other *804 named and specified petitioners herein are omitted on the ground that their inclusion herein is a misjoinder of parties petitioner, and for. a further order, if required, to strike from the caption and the petition pursuant to Buie 103 of the Buies of Civil Practice all allegations and descriptive portions relating to the representative character of the proceeding.”
The petitioners are 53 individuals, each the president of a different civic association in Queens County, New York. After listing their names individually and as president of the respective civic associations, the title of the petition reads: “ on behalf of themselves and on behalf of the 32,000 protestees who have filed their applications for the Correction of the Assessed Valuations for the Fiscal Year 1959-1960 and on behalf of the 250,000 owners of one and two family homes in the Borough of Queens, City of New York, all being residents and property owners of the City of New York, Borough of Queens, similarly situated.”
The petition is verified by the first of the 53 petitioners, Max M. Lome. The relief sought therein is to reduce to the 1958-1959 level the real estate assessments for the year 1959-1960 of the individual petitioners, of all those 32,000 property owners who filed protests against the current increase, and the 250,000 home owners and taxpayers of the Borough of Queens, similarly situated. The ground for such relief is that the increase is “ erroneous, illegal, excessive and unconstitutional.” The petition alleges in substance that :
1. A review of the assessed valuation is of common or general interest to all of the 32,000 “ protestees ” unnamed, because their applications for revision were denied.
2. That there are 250,000 home owners, also unnamed, who these petitioners claim have such a common or general interest as would warrant, and the petitioners specifically request, the review herein of all said assessments.
3. That the assessors allegedly did not personally inspect each building, house or lot in the Borough of Queens within the time allotted therefor by law because such allotted time was not sufficient for them to do so. There is no allegation, however, that the assessors did not inspect any or all of the 53 parcels owned by the petitioners themselves.
4. That the assessors met “among themselves” before
August 1, 1958, and decided to increase the assessments on all one and two-family houses in this Borough, and ‘ ‘ that this action * * * not based upon a personal inspection, consti-
tuted a conspiracy to increase valuations in the Borough of Queens not in accordance with the method of assessments as *805 provided by law and was an illegal act rendering such increases as were made illegal and contrary to law.”
5. That all the properties of the petitioners, the 32,000 unnamed ‘1 protestees ’ ’ and of the 250,000 home owners of one- and two-family houses in the Borough of Queens, as appears upon the tax rolls for the year 1959-1960 were overvalued “ to the extent of the increases made over the 1958-1959 level of the assessed valuations of such property.”
6. “ That Commercial-property is differently assessed than is one and two family homes in that commercial property is assessed at 100% of current valuations or market values while one and two family homes are assessed on an altogether different basis as a non profit piece of property; that by this method of assessment the commercial property or income producing property carry the great burden of assessed valuations and payment of taxes affording one and two family homes great relief from excessive taxation.”
7. That the “average” assessment of one- and two-family homes in Brooklyn and Manhattan is less than 50% of the full value thereof, whereas in Queens the assessments on such homes are “more than 60% of the full value of other real estate in said Borough, which such 60% at present constitutes more than 100% of full value under ordinary circumstances.”
8. “ That there is no basis for equality of taxation for the Borough of Queens with respect to the other Boroughs of the City of New York in that in exchange for the tax dollar so paid the Borough of Queens does not receive equal services from the City of New York.”
9. That the Queens home assessments have been increased because of exemptions granted to other owners in the City of New York.
10. That an increase of over $500,000,000 against one- and two-family houses in the Borough of Queens is “ more than all of the increases against one and two family homes in all of the other Boroughs of the City of New York and was excessive, unequal, disproportionate and erroneous.”
Disregarding the fact that petitioners have in some respects followed the procedure that obtained under the old method of review — by certiorari — which has been abolished, we have here a petition which in effect seeks the review in a single proceeding of all the assessments in the Borough of Queens, over 280,000 in number. It is self evident that such a number cannot qualify even under the liberal provisions of the remedial statute. Anri if the broadest view is taken of the allegation as to “ Commer *806 cial ” property then this proceeding is in effect a petition to review the entire current assessment roll of the Borough of Queens.
In Matter of Allen v. Rizzardi (5 N Y 2d 493), a group of home owners on a single development where the houses were built by the same builder, of assembly line construction differing little in size or character, was held to be entitled to have their asssesments reviewed in a single proceeding. In that case, however, the petition set forth (a) the-name of each petitioner, (b) an adequate description of his property, (c) the actual assessment of land and improvements, (d) the claimed value of each and (e) the extent of the alleged overvaluation.
In the instant case, items (b), (c), (d) and (e) are absent. Such particulars are necessary to show that the conclusions set forth have any substance and whether a cause for review exists. The named petitioners here refer to nothing but a section, block and lot number, each appearing to be in widely separated, divergent and various areas, streets and locations. It may be inferred that no two are similar in detail, cost, type of construction or location and thus radically different from the situation which obtained in the Allen case.
Narrowing our view solely to the 53 named parcels there still may be as much difference among them as between a castle and a cottage. Even the same kind of house but in a different location can have a difference of 25% in value. Petitioners aver that they should have a review because this year’s assessment is more than that of the previous year. The difference may be only $10, representing a few cents in tax. The averment as to inequality is a mere unsupported conclusion. No comparative properties or figures are set forth. The inequality, if any, may be infinitesimal so that none of the 53 named petitioners qualifies to have his assessment reviewed in a single proceeding as in the Allen case.
There is an allegation in the petition that has to do with illegality. It is averred that the assessors did not inspect all the real property in the Borough prior to preparing this assessment roll. There is no allegation that they did not inspect the 53 properties of the petitioners, or that they did not inspect the properties of the 32,000 ‘ ‘ protestees. ’ ’ The basis for the allegation, as stated, is that in the time allotted by law, it was a physical impossibility for the assessors to make such inspection. It has always been so. The claim is tantamount to the assertion that the statute requires the assessors to do something that it is impossible for them to do, and that such enforced failure *807 makes them violators of their oath affixed to the roll and also violators of the law.
The required oath or certificate of the assessors is conceded to be attached to the assessment roll which is a public record, and it states that they have examined all the properties contained therein. Recently the subject was comprehensively discussed by Mr. Justice J. Irwin Shapiro in Cedzich v. City of New York (19 Misc 2d 572) where the same general allegations as to review, as here, were presented in an action for a declaratory judgment. In that case, too, it was the contention that the assessment record, upon which the assessment of the taxpayer’s property appeared, was defective because of the assessors’ alleged failure to 1 ‘ personally examine each and every house, building, lot, pier or other taxable property of the said city as is required by law.” The holding there was that the oath may not be collaterally attacked. The court noted: 11 ‘ This principle rests upon the solid ground of public policy which restrains public officials, certainly those acting in a judicial capacity, from impeachment of official acts which the law requires, and which they have solemnly declared that they have performed.”’ (See Hunter v. New York O. & W. R. R., 116 N. Y. 615, Matter of Ackerman v. Kern, 281 N. Y. 87, 94; Buffalo & State Line R. R. v. Board of Supervisors of Erie County, 48 N. Y. 93; Mayor of City of New York v. Davenport, 92 N. Y. 604, 610, 611; Brooklyn El. R. R. Co. v. City of Brooklyn, 11 App. Div. 127; 51 Am. Jur., Taxation, § 673; 84 C. J. S., Taxation, § 402.)
It may be noted here that the petitioners are willing to accept their assessments on the roll of 1958-1959 because they ask that their current year’s assessments be reduced or restored to what they were on the 1958-1959 roll. They allege that this year’s assessments are overvalued by the amount of the difference between the two years. As to inspection by the assessors, the same impossibility must have existed in the former year, too. However, petitioners have carefully avoided alleging that the 1958-1959 roll has no oath, or that the oath is defective, because that would destroy the foundation from which this attack is launched against the 1959-1960 tax roll.
The petitioners seem to claim that increasing the assessment over the prior year is evidence of overvaluation. It is the essence of an assessment that it fixes value as of a certain time. Each year is separate and distinct from every other year. In no sense can the value fixed by the assessors for one year, or by a court on review, have any application to the issue of value *808 in recurring assessments or proceedings to review them. (People ex rel. Hilton v. Fahrenkopf, 279 N. Y. 49, 52-53; People ex rel. Del Bello v. Lennox, 275 App. Div. 787; People ex rel. Horwitz v. Miller, 267 App. Div. 897.)
The petitioners allege that their properties are assessed at only 60% of their full value which might justify an increase in assessment up to full value without any right to a review for overvaluation. As to inequality the petitioners aver the generality, hut show nothing as to their particular properties. It is next to impossible to establish inequality as to a whole assessment roll containing some 280,000 parcels. Such a task would require volumes of evidence and data which in the end would have to be applied to particular parcels of property. To succeed the petitioners would have to show that their particular assessments were materially larger than the assessments on similar properties in similar areas. None of the requirements for such a process is averred in this petition.
People ex rel. Yaras v. Kinnaw (303 N. Y. 224) is a good example. There the property was assessed at $394,500 and on review this amount was reduced to $178,000 on the ground of overvaluation. A further and separate inquiry, as to inequality, resulted in a further reduction to $128,872. On inequality the court found that the general ratio of assessment was 72.4% of full value, whereas the property in suit had been assessed at full value, or 27.6% over that ratio. The court held that equalization rates are fixed and corrected for a different purpose from, and have no bearing on, the issue presented in an inequality case; that it was not the legislative intention to barden either the taxpayer or the taxing body with the unwieldly task of proving the ratio of assessments to full values of all the properties in the tax district and that section 293 of the Tax Law was expressly designed to limit the proof in such cases to selected parcels and to actual sales. It was also held that opinions of experts should not be received as to the average ratio of assessments to values in the tax district since contradictory opinions would not be of any aid to the court unless tested by collateral evidence of countless other parcels, and that such a testing was beyond the resources of the average taxpayer.
The court further pointed out at page 229 that “ In overvaluation cases, the only pertinent assessment is that of the subject parcel; assessments of other parcels are irrelevant to overvaluation and so are the statutory procedures relating to the assessment ratios in the sample parcels and in the sales of other parcels.” This makes it clear that the assessed value and *809 the claimed inequality of parcels to be reviewed must be alleged. If the overvaluation is claimed to be the difference over the previous year both amounts must be averred. The same is true as to the claim of inequality. The only allegation in this petition that relates to the subject of equalization is one setting forth rates of equalization alleged to have been stated by the “ said Tax Commissioner.” This has no validity in this proceeding.
The petitioners here allude to properties other than homes which they designate ‘ ‘ Commercial ’ ’ property and allege that such property is assessed generally “ at 100% of current valuations or market values ” and as a result thereof pay greater taxes thereby 1 ‘ affording one and two family homes great relief from excessive taxation.” This subject has several aspects, any one of which would, if true, require a review of all the assessments on “ Commercial ” property. This would bring in for review every assessment on the roll for the tax year 1959-1960.
The court thus finds that the petition before it deals largely in generalities and irrelevancies and does not satisfy sections 163-166 of the Charter or section 166-1.0 of the Administrative Code of the City of New York which set forth specifically the manner in which a review of an assessment may be obtained. There is, therefore, no basis set forth in this petition for a review of any single assessment of the 53 parcels of the named petitioners, of the 32,000 “protestees ”, or of the 250,000 home owners or of the many more thousands of commercial properties contained in this assessment roll.
It should be pointed out that every taxpayer has a clear right under the law to challenge his assessment in the courts, but the procedures set forth in the law for so doing are exclusive and must be followed if a review is to be had. This has not been done here. Accordingly, the respondent’s motion to dismiss the petition is granted, but without costs.
Submit order.