Marshall E. Livingston, J.
These motions by the defendants to dismiss plaintiffs’ complaint, and the cross motion by plaintiffs for partial summary judgment or a declaratory judgment, arise out of the assessments for the years 1967 through 1969 of the nuclear power plant (Ginna Plant) owned by the corporate defendant (RG&E), located on property owned by RG&E in the Town of Ontario, Wayne County, New York.
*847 The complaint alleges two causes of action. The first purports to spell out an action in fraud in that all of the defendants conspired and connived to have the power plant property assessed at a lower ratio to its true value than the ratio consistently applied to other property in the town.
The procedures whereby the assessments were made are said to have been fraudulent, illegal, unconstitutional and otherwise void, causing damage to the plaintiffs by reason of claimed inequality of the school district’s tax levy.
Plaintiff Boome sues for himself and all other real property owners similarly situated. He alleges that the undervaluation of BG&E’s Ginna Plant resulted in the payment of higher school taxes by himself and others. As a result of the illegal undervaluation, he claims the New York State Board of Equalization and Assessment in 1969 imposed a “ special equalization rate ”, which reduced the rate from .59 to .46 of the true value, thus increasing the school tax rate for the tax year 1969-1970. Mr. Boome alleges that the reduction of the equalization rate was based ‘ ‘ entirely ’ ’ on undervaluation of the Ginna Plant. Consequently, plaintiff Boome alleges he and others pay taxes 1 ‘ which ought to have been levied on property not owned by them but which property is owned by the said Rochester Gas and Electric Corporation ”.
The school district says the undervaluation has caused it to lose revenue; that it has been, is, and will be required to levy “an inequitable, unjust, unequal, unconstitutional, and illegal tax, all contrary to Law ’ ’, and that the bonding power of the school district has been “lowered ” by the “ aforesaid illegal, unequal, and fraudulent assessment practices ”,
Parenthetically, it is noted that not all the members of the Town Board are sued. Messrs. Benedict and VanDeVate are elected Town Justices and, as such, by law are members of the town board, which is composed of the Supervisor, the Town Justices and two Couneilmen.
The second cause of action in plaintiffs’ complaint, also sounding in fraud, is brought against the corporate defendant BG&E and two of its officers. This cause of action restates the allegations of the first cause of action and then charges that BG&E, knowing the “ value or cost ” of the Ginna Plant, deliberately and knowingly misrepresented such to defendant Parsons, a Town Assessor, who relied thereon in fixing the plant’s assessment during 1967, 1968 and 1969.
*848 The complaint must be dismissed, for several reasons :
(1) Plaintiff school district has suffered no damage.
(2) Plaintiff Roome has pleaded no facts demonstrating actionable damage, either to himself or to the other persons he alleges are similarly situated.
(3) The school district has no legal capacity to bring this action under the undisputed facts here.
(4) Mr. Roome may not maintain a class action in an assessment case.
(5) This action really seeks a review of the RGr&E assessment looking toward a substaintial increase thereof. Article 7 of the Real Property Tax Law provides the exclusive procedure for challenging an assessment, which has not been followed in this case.
(6) The cause of action in fraud does not comply with CPLR 3016 (subd. [b]).
There are other reasons for the legal insufficiency of the complaint, but the ones enumerated furnish enough fatal defects to justify passing over those reasons. The defects will be considered in reverse order.

The. complaint does not state a cause of action in fraud.

CPLR 3016 (subd. [b]) requires: “Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail.”
This complaint does not state in detail the circumstances constituting the wrong. The complaint is replete with terms supposed to connote fraud, such as “ conscious scheme and misleading design”, “ collude and conspire ”, “ conspired and colluded ”, “ conspiracy and pact, surreptitious and clandestine in origin, design, and perpetration ’ ’.
However, except by innuendo and the perhaps designed conclusory effect of words alleging a fraudulent scheme, this complaint does not detail the “ circumstances constituting the wrong ” (CPLR 3016, subd. [b]).
Mr. Justice Bergan put it succinctly when he said in Donato v. American Locomotive Co. (279 App. Div. 545, 547): “ Words like ‘ conspiracy ’ or ‘ plan ’ or ‘ fraudulent ’ are not actionable in themselves when stated in a pleading. They do not breathe fresh vigor into a morbid complaint unless facts are also pleaded to show that the pleader is hurt in some legal sense.”
This premise is fundamental and was echoed by the Appellate Division, Fourth Department in 1928 (see Swift v. Chester Carbon Co., 223 App. Div. 808). (See, also, 3 Weinstein-KornMiller, N. Y. Civ. Prac., par. 3016.04 et seq.; 5 Carmody-Wait *849 2d, New York Practice, §§ 29:733, 29:738, 29:954; Flesher v. Goldberg, 25 A D 2d 652; Meltzer v. Klein, 29 A D 2d 548.)
In most cases, however, where the complaint inexpertly alleges a cause of action in fraud, opportunity is given to replead and amend. Therefore, we consider the other defects.

Article 7 of the Real Property Tax Law provides the exclusive remedy to review assessments.

Perhaps, as plaintiffs suggest in their brief, “ because of the specialized factual situation in which the instant action arises, background information is necessary to an appreciation of the problems and issues presented ”. This approach is helpful.
On June 24, 1969, a duly adjourned and timely grievance day hearing was held by the Town of Ontario Board of Assessors relating to the RG&E Ginna Plant assessment. At this hearing all of the parties in this action were present or represented by counsel.
The petition, which was the raison d’etre for the hearing, the hearing itself, and the board’s decision not to change the RG&E assessment'were followed by four actions or proceedings seeking similar relief:
(1) On August 25,1969, plaintiffs brought a proceeding under article 78 of the CPLR in Supreme Court to review the action of the Town Assessors and the board denying these plaintiffs an increase in the RG&E assessment.
(2) On August 26, 1969, this action was commenced by service of the summonses. The complaint followed on October 9, 3969.
(3) On August 28, 1969, another proceeding was brought in Supreme Court by plaintiffs under article 7 of the Real Property Tax Law to review the instant assessment.
(4) On October 31, 1969, a taxpayer’s action under section 51 of the General Municipal Law was commenced by these plaintiffs against Mr. Parsons, the Chairman of the Board of Assessors and a defendant in this action.
Suffice it to say that plaintiffs appear to have tried to cover all approaches to sustain their contentions. Nevertheless, the sole remedy of plaintiff Roome, as a taxpayer aggrieved by inequality of assessments, is a review of his assessment under articles 5 and 7 of the Real Property Tax Law (Matter of Lome v. Tax Comm. of City of N. Y., 19 Misc 2d 803, affd. 11 A D 2d 773, mot. for lv. to app. den. 11 A D 2d 948 [31G]).
In this unverified complaint plaintiff Roome did not spell out what his assessment is and wherein it is proportionately higher and thus inequal to that of RG&E. The same applies to those *850 persons similarly situated for whom Mr. Roome purports to sue.
The fact that this proceeding was not brought under article 7 of the Real Property Tax Law, and there is another action pending, designated as an article 7 proceeding, permits its dismissal (CPLR 3211, subd. [a], par. 4).

Plaintiff Roome may not maintain a class action.

A class suit may not be brought to review real property assessments (Matter of Ploss v. Board of Assessors, 17 Misc 2d 283; Wallace v. The Mayor, 53 App. Div. 187; Gaynor v. Rockefeller, 15 N Y 2d 120; Matter of Wolf v. Assessors of Town of Hanover, 308 N. Y. 416).
Nearly 100 years ago Chief Judge Church, Matter of Delancey (52 N. Y. 80, 82), expounded the reason a class action may not be maintained in assessment cases when he said: ‘ ‘ The 1 party aggrieved ’ can only apply to vacate, and the order cannot affect any other party or the lands of any other. There may have been irregularities as to one owner and not others, and some of the owners might be willing to waive irregularities applying to all; in which case such owners are not in any legal sense aggrieved parties.”

The school district has no legal capacity to bring this action under the undisputed facts here.

This action was presumably commenced by the Board of Education of the school district. Mr. Roome, one of the plaintiffs, is the president of the board.
Although the title of the action seemingly indicates it was brought by Central School District No. 1, i.e., the voters comprising the district, the complaint makes no such allegation. Indeed the undisputed proof is that no authorization to bring the action was ever given by the qualified voters who comprise the district.
An examination of the Education Law indicates only two places from whence comes the power to bring a proceeding relating to taxes or tax assessments. Section 2021 thereof provides in part:
“ The inhabitants entitled to vote, when duly assembled in any district meeting, shall have power, by a majority of the votes of those present and voting: * * *
“ 16. To vote a tax to replace moneys of the district, lost or embezzled by district officers; and to pay the reasonable expenses incurred by district officers in defending suits or appeals brought against them for their official acts, or in prosecuting suits or appeals by direction of the district against other parties. ’ ’ (Italics supplied.) t qlJ
*851 Subdivision 1 of section 416 of the Education Law says in part: ‘ ‘ A majority of the voters of any school district, present and voting at any annual or special district meeting, duly convened, may authorize such acts and vote such taxes as they shall deem expedient for * * * or for such other purpose relating to the support and welfare of the school as they may, by resolution, approve. ’’ (Italics supplied.)
The Education Law enumerates the powers of local school boards in detail. In article 37 on central school districts, section 1804 directs the management of the district by a board of education having the same powers and duties as the board in a union free school district. Article 35 governing that type of district specifies some 35 separate school board powers (§ 1709), and also includes several other sections reciting additional powers. By section 1710 such boards also have all the powers of common school boards (art. 33), which thus incorporates the 32 powers enumerated in section 1604, together with additional provisions in the common schools article. There is no reference in any of these provisions to a board of education concerning itself with assessments on taxpayers in its school district.
“ It is a universal principle in the interpretation of statutes that expressio unius est exclusio alterius. That is, to say, the specific mention of one person or thing implies the exclusion of other persons or things” (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 240. See, also, cases cited therein).
Where a statute, as does the Education Law, expressly enumerates the powers of a school board, there is a general, if not altogether irresistible, inference that what is omitted or not included was intended to be omitted or not included. I am of the opinion that the powers of the school board, as provided by the Education Law, cannot be extended to embrace and include the power to bring this action, even on the ground of public policy, without emasculating basic rules and principles of statutory construction (Dezsofi v. Jacoby, 178 Misc. 851, 854).
Defendants contend that the plaintiffs are actually attempting to be volunteer champions of the taxpayers in the district. I agree and hold that, as such, they have no standing, statutory or otherwise, to bring this action (Union Free School Dist. v. Village of Glen Park, 109 App. Div. 414; Board of Educ. v. Board of Educ., 76 App. Div. 355; Matter of Board of Educ., Neversink, etc. v. Wilson, 203 Misc. 566, affd. 282 App. Div. 821, mot. for lv. to app. den. 282 App. Div. 847; Matter of Bethlehem Union Free School v. Wilson, 303 N. Y. 107).

*852
Plaintiff Roome has not alleged any actionable damage either as to himself or to the other taxpayers he purports to represent.

Mr. Roome alleges damage to him because he claims RG&E was underassessed and inferentially he and the others in his situation are damaged by having been required to pay unequal and inequitable taxes at a higher rate than RG&E. Suffice it to say that there are no facts and no allegations whereby the individual plaintiffs assert that the full value of their property is fixed at a higher assessed valuation than that of RG&E. For aught that appears in the complaint, Mr. Roome, or several of those persons on whose behalf he claims to represent, might be assessed at a lower ratio to their full value than RG&E. Therefore, no damage to the individual plaintiff and his class has been alleged so as to create an issue warranting a trial.

Plaintiff school district has suffered no damage to entitle it to sue.

The school district is npt a taxpayer and consequently has no standing entitling it to complain as an aggrieved party (Matter of Village of Pelham v. New York State Bd. of Equalization, 208 Misc. 201).
The duly adopted budgets for all the years about which the school board complains were raised by a levy against the assessments as fixed by the assessors. No school district may claim it is damaged because it was fraudulently deprived of moneys from underassessment of property when in fact it did raise the revenue required by the budget approved by the voters to meet the current expenses of the district. The argument of the plaintiffs in this regard seems to me to he pure sophistry and hence fallacious.
The plaintiffs, inter alia, also complain that the drop in the ‘ ‘ special equalization rate ’ ’ was occasioned only by the under-assessment of the RG&E property. Without regard to the affidavit of Mr. Scully, the Town Attorney, which is not disputed, indicating that the School Board itself initiated the imposition of the special rate, I consider the following probabilities:
In 1969, whether or not the RG&E assessment was low or reasonable, the fact is that the assessment of RG&E was levied at some $18,750,000. This figure represented an increase in the district in this one property of approximately 80% over RG&E’s 1968 assessment and more than 750% over its 1967 assessment.
In 1967 and 1968 no change in the equalization rate was made. In 1969, due, I think, to the considerable increase in the RG&E assessment of $18,750,000, he it a low assessment or not, the *853 rate was dropped some 13 points. It takes no tax expert to conclude that the 13-point loss would have been considerably greater if the full value of the Ginna Plant had been fixed at $200,000,000, as alleged in the complaint, or even at $126,000,000 as urged in plaintiffs’ briefs.
The foregoing dictates that plaintiffs’ complaint should be dismissed, and plaintiffs’ cross motion for relief denied, all without costs, however.