[Civ. No. 37653. Second Dist., Div. Four. Jan. 31, 1972.]

BRYAN W. STEVENS, Plaintiff and Respondent, v.
FOX REALTY CORPORATION OF CALIFORNIA,
Defendant and Appellant.

Counsel

Musick, Peeler & Garrett and Donald J. Drew for Defendant and Appellant.

Stanley Sapiro for Plaintiff and Respondent.

## Opinion

DUNN, J.—This appeal involves determining: (1) whether one taxpaying property owner may file with an assessment appeals board (Cal. Const., art. XIII, §§ 9, 9.5) an application to increase the assessment (taxes) of another taxpaying property owner; (2) if he may do so, does he thereby become, as a matter of right, a "party" to such equalization proceeding, so that (3) he may demand the right to testify and be represented by counsel who must be allowed to call and examine witnesses, to cross-examine adverse witnesses and to argue the matter? As hereinafter discussed, we conclude that permission to file such application to increase another's taxes is not required by law; such filing, if permitted, does not elevate the applicant to the status of a "party"; further, a board does not abuse its discretion by adopting and adhering to the procedural rules here involved.

Respondent, Bryan Stevens, filed a petition for writ of mandate. Named as defendants were the County of Los Angeles, the county assessor, the county assessment appeals board and Fox Realty Corporation of California. Petitioner alleged: he was a resident and taxpayer of the county and owned real property therein (a house located in Valinda) on which he had paid taxes within one year prior to the filing of the action; defendant Fox Realty owned real property in the county located near the intersection of Mulholland Highway and Cornell Road; for the fiscal year 1968-1969, defendant assessor arbitrarily and illegally assessed Fox's property at less than its full cash value, thereby increasing the burden on other taxpayers of the county; on July 22, 1968, petitioner filed with defendant board an application for an increase in the assessment of Fox's property to represent the true value thereof; on November 8th the board notified petitioner that it had waived preliminary hearing and invoked its jurisdiction, and that an equalization hearing on his application was scheduled for December 4th; at that hearing the board ruled petitioner had no right to file the application and that his attorney would not be allowed to prosecute the application; subsequently the board notified petitioner that his application would be considered as a request that the board exercise its inherent jurisdiction to increase the assessment on Fox's property, and that a preliminary

hearing on this matter would be held December 18, 1968; at the preliminary hearing, the board determined that petitioner was not a party to the proceeding and refused to allow him or his attorney to present evidence or cross-examine Fox's witnesses, confining the attorney to questioning witnesses through the board; at the conclusion of the hearing the board found there was no reason to hold an equalization hearing to determine whether there should be an increase in the assessment of Fox's property.

Petitioner alleged that such action by the board constituted an abuse of discretion, a violation of its duty to equalize all assessments, and denial of the right of petitioner as a taxpayer to have all property assessed equally in proportion to its value. Petitioner sought a peremptory writ of mandate remanding the matter to the board and ordering it to grant petitioner a "full and fair hearing."

Each defendant filed an answer to the petition. A nonjury trial was held at which evidence was produced showing: on July 22, 1968, petitioner filed with the assessment appeals board of Los Angeles County a written application requesting an increase in the 1968 assessment of three parcels of real property owned by Fox and located in the Santa Monica Mountains near Agoura; the application stated that in petitioner's opinion the market value of these parcels was $1,930,000, whereas the county assessor had assigned a market value of $916,800 and an assessed value of $229,200; by letter dated November 8, 1968 the board notified petitioner that on October 23, 1968 the board had waived preliminary hearing and on November 8th had invoked its jurisdiction and scheduled an equalization hearing for December 4, 1968; a similar notice was sent to Fox, directing it to appear on December 4th and show cause why the 1968 market value of its property should not be raised as requested by petitioner; the hearing was had on December 4 and 5; on the latter date the board vacated its previous order of October 23 invoking jurisdiction, and recognized petitioner's application as a motion or request that the board invoke its jurisdiction; the board scheduled a preliminary hearing on the motion for December 18, 1968, to determine whether there was reasonable cause to believe Fox's property was under-assessed or out of equalization; petitioner was invited to attend this hearing, and was told he should be prepared to produce evidence which would establish some reasonable basis for the board to invoke its jurisdiction and schedule a formal equalization hearing.

The preliminary hearing was held on December 18 and 23, 1968. Present were an attorney for petitioner, an attorney for Fox, counsel for the assessor, counsel for the board and several witnesses. The board, through its counsel, explained that the proceeding was an informal, investigative

hearing to determine whether there was reasonable cause for the board to invoke its jurisdiction to set a full equalization hearing.[1] The board then asked petitioner's attorney whether he had any information he wished to present to the board showing why it should invoke its jurisdiction and set the matter down for a full equalization hearing. The attorney replied that he wished to call as a witness Mr. Gould (an appraiser), and requested permission to examine this witness. Counsel for Fox objected on the ground that petitioner was not a party to the proceedings and therefore had no right to participate, either personally or through his attorney. Counsel for the board suggested that, since it was an informal hearing, the board in its discretion either could examine the witness through its counsel or permit counsel for petitioner to do so. The board ruled that its counsel should examine Gould. Counsel for the board thereupon asked questions of Gould on direct examination. Counsel for petitioner then was allowed to submit to the board questions to be answered by Gould. During Fox's cross-examination of the witness, counsel for petitioner was permitted to interpose objections to questions. Later he again requested and received permission to ask questions of Gould through the board. Following this, evidence was presented on behalf of the assessor and Fox. Counsel for petitioner was allowed to make numerous objections to such evidence. At the conclusion of the hearing the matter was taken under submission. On January 17, 1969 the board denied petitioner's request that it invoke its jurisdiction to hold an equalization hearing.

Upon completion of trial of the petition for mandate, findings of fact and conclusions of law were signed and filed in which the court determined: petitioner had a legal right to file the application to increase the assessment of Fox's property; he was entitled to participate in, and be a party to, any preliminary hearing pertaining to the application, and to be represented by counsel of his own choosing at such hearing; as a party, he was entitled to a fair hearing, including the right to call and examine witnesses, cross-examine and argue the cause, and otherwise participate fully; the procedure followed by the board at the preliminary hearing was in violation of the due process clause of the Fourteenth Amendment and denied petitioner a fair trial.

Judgment was entered ordering that a peremptory writ of mandate issue commanding the board to set aside its order refusing to invoke jurisdiction on petitioner's application, to reset a preliminary hearing on the application and to permit petitioner at such hearing to act through an attorney of his

---

[1] In this regard counsel for the board stated: "It should be recognized that this is an informal hearing; it is not an adversary hearing in any sense of the term; it is a matter of just bringing information to the board upon which they might rely to see whether or not they wish to invoke their jurisdiction."

own choosing "including the right to call and examine witnesses, cross-examine, argue the cause, and otherwise participate therein as a party subject to the rules of the board."

■ Fox, alone, appeals from the judgment.[2]

■ Assessment appeals boards of a county have power to equalize the valuation of taxable property in the county. They are governed by the general laws pertaining to county boards of equalization and by rules adopted by the county board of supervisors to "facilitate their work and to insure uniformity in the processing and decision of equalization petitions." (Cal. Const., art. XIII, § 9.5.) Revenue and Taxation Code section 1605 provides that, after giving notice as prescribed by its rules, a county board of equalization "shall equalize the assessment of property on the local roll by determining the full cash value of an individual assessment and by reducing or increasing an individual assessment." Section 1607 (a) provides that an assessment shall not be *reduced* unless the party affected files with the board a written application for reduction. Similarly, the rules of the assessment appeals board of Los Angeles County (adopted pursuant to Cal. Const., art. XIII, § 9.5) apparently authorize only an application by a property owner for reduction of the assessment of his property. (Rules 1(g), 4, 6.)

There is neither a statute nor a rule which authorizes the filing of an application to *increase* the assessment on property of another person.[3]

■ After giving notice to the person to be assessed, a county board of equalization (and hence a county assessment appeals board) may increase an assessment on its own motion; its jurisdiction to do so does not depend upon the filing of an application stating that such assessment is too low, and asking that it be increased. (*Allison Ranch Mining Co.* v. *County of Nevada* (1894) 104 Cal. 161, 164 [37 P. 875].)

---

[2]The writ of mandate ordered by the judgment was directed to the board, not Fox. However, Fox has an interest recognized by law in the subject matter of the judgment, and such interest was adversely affected by the judgment. Therefore, Fox is a "party aggrieved" by the judgment, and may prosecute this appeal. (Code Civ. Proc., § 902; *Estate of Colton* (1912) 164 Cal. 1, 5 [127 P. 643]; *People* v. *Bank of San Luis Obispo* (1907) 152 Cal. 261, 264 [97 P. 306]; *Buffington* v. *Ohmert* (1967) 253 Cal.App.2d 254, 255 [61 Cal.Rptr. 360]; *Leoke* v. *County of San Bernardino* (1967) 249 Cal.App.2d 767, 770-771 [57 Cal.Rptr. 770].)

[3]Political Code section 3673, the predecessor of Revenue and Taxation Code section 1605, originally provided that "the board has power to determine *all complaints in regard to the assessed value of property*, and may . . . correct any valuation by adding or deducting such sum as may be necessary to make it conform to the actual cash value." (Italics supplied.) In 1880 section 3673 was amended by deleting the phrase "all complaints in regard to the assessed value of property." (See *Oakland* v. *Southern Pacific Co.* (1900) 131 Cal. 226, 229-230 [63 P. 371].) The statute in its present form contains no language of similar import.

If such an application is filed, a board is not required by law to act upon it. However, the board here did consider petitioner's application as a request that the board invoke its jurisdiction to increase the assessment of Fox's property, and held a preliminary hearing to determine whether reasonable cause existed to invoke such jurisdiction.

The nature of that hearing was as stated by the board, *i.e.*: it was not an adversary proceeding, but was merely one in which the board was eliciting information to enable it to decide whether to invoke its jurisdiction to increase the assessment. Hence, petitioner's status was, at most, that of a witness, not a party litigant. As stated in 32 Ops.Cal.Atty.Gen. 297 (1959) at pages 301-302: "While it is undoubtedly correct . . . that the [state cemetery] board has the authority to consider those factors raised in the instant protest, it does not necessarily follow that the board must accept and allow formal protests to be filed by affected property owners in all cases concerning the issuance of certificates of authority [to operate a private cemetery] or that the filing of such protests gives the protestants any legal standing in the matter before the board . . . the board may treat the protests here under consideration as simply indications by the protestants that they may have relevant evidence which should be considered by the board and that they are willing to appear at the time and place indicated by the board to present such evidence. . . . Rather than resort to the use of the subpena . . . the board may choose to allow and treat the filing of protests of the instant nature as substitutes for the subpena and simply notify the volunteers of the date and place of investigation and that their presence will be appreciated. The fact that such persons are in this way made witnesses to the proceedings does not, of course, make them party litigants in the proceedings."

The trial court's memorandum decision[4] indicates that the court found petitioner was a "party" to the preliminary hearing, with the attendant right to call, examine and cross-examine witnesses, because of the provisions of Government Code sections 11500 and 11513. Section 11500 provides: "In this chapter [chapter 5, Administrative Adjudication] . . . (b) 'Party' includes . . . any person . . . who has been allowed to appear in the proceeding." Section 11513 gives each party the right to call and examine witnesses and to cross-examine opposing witnesses. Under section 11501, however, the foregoing provisions apply only to the proceedings

---

[4]While a memorandum decision may not be used to impeach the findings, it may be used to explain the process of reasoning by which the trial judge arrived at his conclusions. (*Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 750-751 [47 P.2d 273]; *McBain* v. *Santa Clara Sav. & Loan Assn.* (1966) 241 Cal.App.2d 829, 840 [51 Cal.Rptr. 78]; *Magna Development Co.* v. *Reed* (1964) 228 Cal.App.2d 230, 235, fn. 2 [39 Cal.Rptr. 284].)

of certain agencies which do not include either county boards of equalization or assessment appeals boards.

The rules of the assessment appeals board of Los Angeles County indicate that the only "parties" in a hearing before the board are the county assessor and the person who owns the property which is the subject of the hearing. (Rules 1(g), 4, 13, 14, 15, 20, 24.) The chairman of the board is given power to exercise such control over the hearing "as is reasonable and necessary," and to make rulings regarding procedural matters and the admission or exclusion of evidence. (Rule 9.) Hence the board properly could require that petitioner's attorney examine and cross-examine witnesses only through counsel for the board. It is immaterial that such a procedure might not have been in strict conformity with trial court requirements of procedural due process, for insofar as due process requirements must be observed in an equalization hearing they are applicable only to a party. (See, e.g., *Universal Cons. Oil Co.* v. *Byram* (1944) 25 Cal.2d 353, 361 [53 P.2d 746].) As previously indicated, petitioner was not a party to the preliminary hearing. His only status was that of a witness. It was within the board's discretion to prescribe the procedure by which evidence was to be presented.

There is no law which authorizes the filing of an application with an assessment appeals board to increase the assessment on the property of another person. More significantly, there is no law which requires that upon the filing of such an application the board grant a preliminary hearing in which the applicant is a party with all of the rights pertaining to that status. The applicable statutes and rules indicate that the granting of such a hearing is entirely within the discretion of the board. If a hearing is granted, the board may invite the applicant to attend and present whatever evidence he has to offer and further may prescribe the manner in which evidence is to be presented.

A writ of mandate may be issued to any inferior tribunal or board "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., § 1085.)[5]

■ Mandamus will issue to compel a board to exercise its discretion, but when that discretion has been exercised the writ cannot be used to compel the board to abandon its determination and substitute that of the court or some other person. (*Lindell Co.* v. *Board of Permit Appeals*

---

[5]Under the pleadings and proof, the statute governing the propriety of issuance of a writ of mandate is Code of Civil Procedure section 1085, not section 1094.5 ("administrative mandamus"). (See *Gong* v. *City of Fremont* (1967) 250 Cal.App. 2d 568, 572-573 [58 Cal.Rptr. 664].)

(1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Jacobs* v. *Board of Supervisors* (1893) 100 Cal. 121, 128-129 [34 P. 630]; *Spear* v. *Board of Medical Examiners* (1956) 146 Cal.App.2d 207, 212-213 [303 P.2d 886]; *Broyles* v. *Carter* (1956) 142 Cal.App.2d 647, 650 [299 P.2d 299]; *Patten* v. *County of San Diego* (1951) 106 Cal.App.2d 467, 470 [235 P.2d 217]; *Allen* v. *Bowron* (1944) 64 Cal.App.2d 311, 313 [148 P.2d 673].)

 The assessment appeals board considered petitioner's application as a request that the board invoke its jurisdiction to increase the assessment and held a preliminary hearing on that matter. As a result of the hearing, and in the exercise of its lawful discretion, the board determined not to invoke its jurisdiction. Mandamus does not lie to compel the board to do differently.

The judgment is reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied February 15, 1972, and respondent's petition for a hearing by the Supreme Court was denied April 26, 1972. Peters, J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.