STATE of Missouri ex rel. ST. FRANCOIS COUNTY SCHOOL DISTRICT R–III, Appellant,

v.

C. A. LALUMONDIER et al., Respondents.

No. 58586.

Supreme Court of Missouri, Division No. 1.

Feb. 10, 1975.

Charles W. Medley, Gary E. Stevenson, Farmington, for appellant.

W. Oliver Rasch, Bonne Terre, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, St. Louis, for respondent St. Joe Minerals Corp.

HOLMAN, Judge.

Relator, St. Francois County R–III School District, filed this certiorari proceeding in an effort to obtain a review of the action of the St. Francois County Board of Equalization (hereinafter referred to as the "Board") in failing to increase the assessed valuation of certain real property for the year 1973. The properties involved are 99 tracts owned by St. Joe Minerals Corporation that are located in relator's district. The trial court sustained motions to dismiss, filed by respondents, on the basis that relator did not have standing to seek a review of the action of the Board. Relator has duly appealed. We have appellate jurisdiction because a construction of the revenue laws of the state is involved. We affirm.

The petition of relator alleged that "Prior to August 7, 1973, the School Dis-trict . . . discovered that 99 of the St. Joe tracts within the boundaries of the School District were assessed at approximately $285,000 having been reduced from an assessment of $898,160, in 1972. That the true value of said real estate as of January 1, 1973, was $2,049,073. . . . that such discrepancy was reported to the Board and on August 7, 1973, C. A. Lalumondier, Jeff Matkin, Emmett Shelley, and Elliott Straughan met as the St. Francois County Board of Equalization and thereafter announced that the Board had reviewed the assessment and by a secret vote of 2 to 2, voted not to increase the assessment and therefore, because there was no majority vote, the Board could not increase the original assessment as made by the assessor.

"The School District then requested that the full five members of the Board of Equalization be convened and vote on the question of whether the above 99 tracts of real estate were assessed at their true value, and that any member of the Board who owned stock or had an interest in St. Joe; . . . refrain from voting.

"That thereafter a meeting of the full Board of Equalization was planned for August 8th and 9th, 1973, to pass on the question of whether the St. Joe assessment was correct but before the Board had such meeting it was announced on August 9th, 1973, that the Board had recessed for the year 1973.

"The School District has since learned that two members of the Board of Equalization who voted on the question of the St. Joe assessment had a financial interest in St. Joe and had other conflicts and personal interest in St. Joe, and owned stock in St. Joe which would prevent them from fairly exercising their judgment as to the true value of the St. Joe real estate.

"That an assessment of $295,000 on the St. Joe real estate mentioned herein is not the true value of such real estate and is unreasonably low, and is contrary to the overwhelming weight of the evidence and

was arbitrary and constituted an abuse of discretion.

"That the decision of the County Board of Equalization not to increase the St. Joe Assessment for 1973, was void or voidable . . .

"The decision of the Board is not subject to administrative review and there is no other provision for inquiry into or review of such decision." The prayer sought an adjudication concerning the legality of said proceedings and for general relief.

The General Assembly has provided a comprehensive plan for the assessment and equalization of the value of property for ad valorem taxes. The statutes, in part, provide the following: Section 137.115 [1] (prior to amendment effective December 31, 1974) provided that the assessor should, prior to June 1st, assess all taxable real and tangible personal property at its true value in money. It is provided in Section 137.275 that "Every person who thinks himself aggrieved by the assessment of his property may appeal to the county board of equalization, in person, by attorney or agent, or in writing." Section 138.010(1) provides that "In every county in this state, except as otherwise provided by law, there shall be a county board of equalization consisting of the judges of the county court, the county assessor, the county surveyor . . ." Section 138.030(2) states that "The board shall hear complaints and equalize the valuation and assessments upon all real and tangible personal property taxable by the county so that all the property shall be entered on the tax book at its true value." And in Section 138.050 it is specified that the board " . . . shall raise the valuation of all tracts or parcels of land and all tangible personal property as in their opinion have been returned below their real value . . . the board shall meet on the second Monday in August in each year to hear any person relating to any such increase in valuation; [and] shall reduce the valuation of such tracts or parcels of land or any tangible personal property which, in their opinion, has been returned above its true value as compared with the average valuation of all the real and tangible personal property of the county." Section 138.060 provides that "The county board of equalization shall, in a summary way, determine all appeals from the valuation of property made by the assessor, and shall correct and adjust the assessment accordingly."

Appeal to the state tax commission is provided for in Section 138.430(2) as follows: "Every owner of real property or tangible personal property and every merchant and manufacturer shall have the right of appeal from the local boards of equalization under rules prescribed by the state tax commission. Said commission shall investigate all such appeals and shall correct any assessment which is shown to be unlawful, unfair, improper, arbitrary or capricious." It is well settled that a taxpayer who appeals to the state tax commission and is aggrieved by 'its decision may obtain a review by the circuit court. Rules 100.03 to 100.07, V.A.M.R., inclusive. And if aggrieved by the circuit court judgment may obtain appellate review.

In the event a property owner appeals from the decision of the board the county may appear before the tax commission and seek to uphold the valuation fixed by the board. If the commission grants relief to the property owner it is now clear that the county may obtain a review of that decision in the circuit and appellate courts. In re St. Joseph Lead Company, 352 S.W.2d 656 (Mo.1961).

■ The precise question presented on this appeal is whether in a suit of this nature a school district may obtain a review of a decision of the county board of equalization which failed to increase an alleged underassessment of the real estate of a taxpayer. In that connection this court in the *St. Joseph* case, *supra*, said that

1. All statutory references are to V.A.M.S.

" . . . the legislature may grant the right of appeal or review of tax assessments to either the taxpayer or the state (or one of its political units), and it may also limit or deny the right to either the taxpayer or the state." 352 S.W.2d 659. It appears in the transcript that relator appealed this decision to the state tax commission but that the commission dismissed the appeal for the reason that the statute only provides a right of appeal to a property owner. While the correctness of that action is only incidentally before us we think it is appropriate to say that we agree therewith because such was in accord with the express statutory provision.

We have concluded that relator did not have standing to obtain a review in this action and that the court ruled properly in dismissing the petition.

■ In connection with the question before us it may be of interest to note that the Commission took no affirmative action in regard to these properties. The assessments were made by the assessor and the Commission merely failed to increase the amounts. "Certain recognized principles in the law of taxation may well be noted. Assessments and the valuations of real estate for taxation are never subject to exact ascertainment, and they are, at best, matters of opinion and estimate on the part of the taxing officials . . . There is a presumption of validity and of good faith in the actions of taxing officials, and of the correctness of assessments." May Department Stores Co. v. State Tax Commission, 308 S.W.2d 748, 759 (Mo.1958).

■ Relator no longer contends that it has a right to appeal under Section 138.-430(2) or to a review under Rules 100.03 to 100.07 inclusive. It is its contention here that the constitution provides a right of review for all administrative decisions and that a review in this type of case may be obtained by certiorari under the provisions of Rule 100.08 which is substantially the same as Section 536.150.

Section 22, Art. V, Mo.Const., V.A.M.S., reads as follows: "All final decisions, findings, rules and orders of any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law, and in cases in which a hearing is required by law, whether the same are supported by competent and substantial evidence upon the whole record."

Rule 100.08 contains the following: "(a) Review by Injunction—Original Writ or Other Action—Uncontested Cases. When any administrative officer or body existing under the constitution or by statute or by municipal charter or ordinance shall have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person, including the denial or revocation of a license, and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, *certiorari,* mandamus, prohibition or other appropriate action, and in any such review proceeding the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary or capricious or involves an abuse of discretion; and the court shall render judgment accordingly, and may order the administrative officer or body to take such further action as it may be proper to require; but the court shall not substitute its discretion for discretion legally vested in such administrative officer or body, and in cases where the granting or withholding of a

privilege is committed by law to the sole discretion of such administrative officer or body, such discretion lawfully exercised shall not be disturbed.

"(b) Not Applicable to Contested Cases. Nothing in this Rule . . . shall apply to contested cases reviewable pursuant to Rules 100.04 to 100.08.

"(c) Powers Not Impaired. Nothing in this Rule shall be construed to impair any power to take summary action lawfully vested in any such administrative officer or body, or to limit the jurisdiction of any court or the scope of any remedy available in the absence of this section."

The question presented is one of first impression in this state. No case has been cited (and we have found none) where the state or any political subdivision thereof has attempted to appeal or to otherwise obtain a review of action taken by a county board. Cases in other states, however, support our decision. An annotation in 5 A.L.R.2d 576 states the general rule as follows: "The right of the public, as such, or as represented by the state, a county, a city, or a township or the boards or officers thereof, to complain of the underassessment or nonassessment of property has been raised in a number of cases. In each case the decision is one of statutory construction, so that no fundamental generalizations can be made. In fact, in Chicago, R. I. & G. R. Co. v. State (1922; Tex. Civ.App.) 241 S.W. 255 (affd. (1924; Tex.) 263 S.W. 249), the court observed that there was no statutory provision giving to the state and the public a remedy in the trial courts where individual or corporate property had been grossly undervalued or underassessed by the owner, assessors, and county boards of equalization, and said that in order for the public to question and have the courts review individual assessments and actions of official boards in respect thereto, there must be some statutory provision authorizing it. . . ."

The following cases clearly support the rule that in the absence of express statutory authorization no appeal or other review is provided for political subdivisions of the state in regard to alleged underassessments: Manchester v. Furnald, 71 N.H. 153, 51 A. 657 (1901), Blogie v. State Tax Commission, 111 N.H. 246, 279 A.2d 603 (1971), Central Sch. Dist. #1 v. Rochester Gas & Elec. Corp., 61 Misc.2d 846, 306 N.Y.S.2d 765 (1970), Application of Bd. of Ed. of Cent. Sch. Dist. #1, etc., 61 Misc.2d 838, 306 N.Y.S.2d 833 (1969), and State v. Little, 94 Ark. 217, 126 S.W. 713 (1910). By analogy it is also interesting to note that in Stevens v. Fox Realty Corporation of California, 23 Cal.App.3d 199, 100 Cal. Rptr. 63 (1972), as well as in the Cent. Sch. Dist. cases, supra, it is held that a taxpaying property owner could not litigate in an effort to obtain a higher assessment on the property of another taxpayer. The court in Stevens indicated that when such a person appears before the board to make complaint he should be considered a witness rather than a party.

An example of a statute granting the right relator seeks is the following South Dakota statute: "Any person, firm or corporation, public or private, or any taxing district or governmental subdivision or agency interested, feeling aggrieved by the action of the county board of equalization relative to the assessment of its property may, within thirty days after receiving notice of the decision of such board, appeal to the state board of equalization for a determination of such grievance." City of Sioux Falls v. State Board of Equalization, 203 N.W.2d 419, 420 (S.D.1973). In that case the statute was construed as not permitting a complaint by one taxpayer concerning the low assessment of another taxpayer's property but did authorize a governmental subdivision to appeal from a low valuation on any property located in its district.

As we have stated, there is no statutory provision for an appeal by relator in this instance. The only remaining question is whether Section 536.150 (Rule 100.08) should be construed as authorizing a re-

view in this sort of case. It will be noted that the constitutional section in question provides for a review of decisions that "affect private rights" and that Section 536.150 provides for a court review of decisions "determining the legal rights, duties or privileges of any person . . ." We do not think that the right, if any, of relator in this case is encompassed within either of the quoted provisions. The cases we have found that discuss private rights are those that relate to personal claims such as the right to welfare benefits or to a pension and do not include public rights of the nature here involved. Hill v. State Dept. of Public Health and Welfare, 503 S.W.2d 6[2] (Mo.1973), State ex rel. v. Murphy, 224 S.W.2d 68[8] (Mo.1949) and Kansas City v. School Dist. of Kansas City, 356 Mo. 364, 201 S.W.2d 930 (1947). Moreover, in the May Department Stores case, supra, we held that a landowner could not obtain a review under Section 536.150 of the annual order of inter-county equalization made by the State Tax Commission because the section " . . . clearly comprehends only decisions involving individual rights and interests; this is indicated by the use of such terms as 'any person,' the 'revocation of a license,' and 'such person' . . ." 308 S.W.2d 756. The case of In Re Roadway in Section 21, Township 60, Range 6W., 357 S.W.2d 919 (Mo.1962) is also applicable. Therein the county court made an order vacating a portion of a roadway and the remonstrants sought to appeal and the circuit court dismissed the appeal. On appeal to this court we held that the proceeding affected only the public interest and not private rights; that the statute (now 536.150) relates only to decisions involving individual rights and interests and that appellants were not entitled to a review thereunder.

We have the view that if the General Assembly had intended to provide a review of alleged underassessments at the request of a governmental subdivision it would have so provided in Section 138.430(2) which provides for an appeal by property owners. No doubt such was originally

omitted on the theory that public officials would adequately protect the interests of the state and its subdivisions and hence it was only necessary to provide an appeal for property owners who considered the valuation of their property to be excessive. We recognize that relator has a vital interest in the assessment valuation of property located in its district. In the situation presented it may be that the legislature should review the matter and give consideration to an appropriate amendment of the section. Until appeal or other review procedure is provided, however, we must rule that school districts do not have standing to obtain a review of alleged underassessment of property by the county board.

Judgment affirmed.

All concur.